Steven Paul BARLOW, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C0–84–573.

Supreme Court of Minnesota.

March 29, 1985.

Hubert H. Humphrey, III, Atty. Gen.,
Joel A. Watne, Asst. Atty. Gen., St. Paul,
for appellant.

Paul W. Rogosheske, Hastings, for respondent.

SIMONETT, Justice.

This appeal raises the question whether a court has the authority, either by statute or under its inherent powers, to expunge from the records of the Commissioner of Public Safety the revocation of respondent's driver's license which was later rescinded. We conclude the authority to expunge is lacking, and we reverse.

About 11 p.m. on March 4, 1983, a police officer noticed respondent Steven Barlow, age 17, standing by his pickup truck which had been driven onto a property owner's lawn. According to the officer, Steven smelled of alcohol and his appearance, speech and ability to walk were indicative of drinking. Steven was arrested for driving under the influence of alcohol. According to the officer, Steven agreed to take a chemical test to determine the presence of alcohol but refused to choose the type of test. The officer interpreted this as a refusal to take any test. The Commissioner then revoked Steven's driver's license pursuant to Minn.Stat. § 169.123, subd. 4 (Supp.1983). On Steven's petition (which did not stay the revocation), an implied consent hearing was held in Dakota County Court and, by order of June 16, 1983, the court rescinded the Commissioner's order of revocation. On August 4, 1983, Steven pled guilty to a reduced charge of careless driving. About 2 months later, the trial court's rescission of the license revocation was affirmed by a district court panel.

Thereafter, Steven moved in Dakota County District Court (sitting also as a county court) for an order removing from the records of the Commissioner of Public Safety any reference to Steven's driver's license having been revoked and then reinstated. The trial court so ordered, noting a person "shall not be branded as an alcohol related traffic offender when vindicated." On appeal, the Court of Appeals affirmed,

*Commissioner of Public Safety v. Barlow*, 352 N.W.2d 851 (Minn.App.1984). We granted a petition for further review.

1. The first issue is whether there is statutory authority for the trial court to order removal of this revocation transaction from the Commissioner's records. We hold there is not.

Minn.Stat. § 169.123, subd. 6 (1984), provides that, at an implied consent hearing, "[t]he court shall order either that the revocation be *rescinded* or sustained." (Emphasis added.) Relying on cases borrowed from contract law, the Court of Appeals felt that "rescinded," as used in the statute, means to undo from the very beginning, *i.e.*, to treat the event rescinded as if it had never occurred, and, therefore, the Commissioner's record of respondent's revocation must be erased. We disagree. Like any word, the word "rescind" has an elasticity of meaning, but we do not think, in the context here of administrative regulation of driving privileges, that the meaning of rescission can be stretched to include expungement. While rescission seeks to put the parties into the position they were in before the event which is rescinded, this is ordinarily in terms of relieving the parties of the consequences of the event rescinded, not of assuming the event itself never occurred. To erase all evidence of the event as if it never occurred is usually called "expungement," and when this extraordinary relief is intended, the legislature is quite specific in saying so, either by destroying or sealing up evidence of the event or returning it to the offended party. *See, e.g.,* Minn.Stat. § 152.18, subd. 2 (1984), authorizing expungement of certain records upon dismissal of drug-related charges; Minn.Stat. § 299C.11 (1984), requiring return of identification data upon determination of criminal proceedings in favor of person arrested, which was intended, we said in *In re R.L.F.*, 256 N.W.2d 803, 806 (Minn.1977), at least under certain circumstances, "to wipe the slate clean"; and Minn.Stat. § 242.31 (1984), dealing with restoration of a convicted person to his civil rights. *Compare* Minn.Stat. § 638.02 (1984) (pardon extraordinary,

records to be sealed and person relieved of disclosing the fact he was once convicted).

■ We think if the legislature had intended expungement of license revocation records it would have said so in no uncertain language. The legislature may well have thought that the public interest in highway safety requires keeping complete and accurate accounts of incidents involving drivers. Thus Minn.Stat. § 171.12, subd. 1 (1984), requires the Commissioner to maintain a record of "[t]he name of every person whose license has been suspended or revoked by the department, and * * * the reasons for such action," and subdivision 3 of the same section requires this record to be kept for at least 5 years. As the commissioner points out, the fact that a revocation may be rescinded does not necessarily mean that there were not grounds for the revocation. In any event, the record will show not only the revocation of driving privileges, but, of course, the fact that a court set it aside. In this setting, we hold that "rescind," as used in section 169.123, subd. 6, means only to set aside, not to expunge.

2. The second issue, not reached by the Court of Appeals, is whether, absent statutory authority, the trial court could have granted expungement as a proper exercise of its inherent power. We conclude this is not a case for any exercise of a court's inherent powers.

■ If a person's constitutional rights might be seriously infringed by retention of his or her public records, a court may, in the exercise of its inherent power, expunge those records. *State v. C.A.*, 304 N.W.2d 353, 357–58 (Minn.1981); *In re R.L.F.*, 256 N.W.2d 803, 808 (Minn.1977). Respondent Barlow has made no such showing. His only claim is that retention in the records of his rescinded revocation will make it more difficult and expensive for him to obtain auto insurance. This claim is speculative, at best, and in any event it does not rise to the level of infringement of a constitutional right. *Compare In re R.L.F., supra* (petitioner's conviction for auto tampering set aside but, notwithstanding peti-

tioner's claim that his arrest record would adversely affect his chances for police employment, this court denied expungement of the arrest record). Nor is the trial court's observation, that retention of respondent's revocation record leaves respondent "branded as an alcohol related traffic offender when vindicated," entirely accurate. Respondent does not claim the police lacked probable cause to arrest him for driving under the influence of alcohol and he did plead guilty to a reduced charge of careless driving, which matter, presumably, is of record. There are no egregious circumstances here implicating any of respondent's constitutional rights.

■ We have also recognized another aspect of the court's inherent authority, namely, the "inherent authority of the courts to control the performance of judicial functions," *C.A.*, 304 N.W.2d at 358, which involves that power "which is essential to the existence, dignity and function of a court because it is a court." *Id., quoting In re Clerk of Lyon County Court's Compensation*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976). We stated in *C.A.* that this power, in appropriate instances, may be extended to expungement orders affecting court records and agents of the court. The test is "whether expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring" the order. *Id.* at 358. In addition, any exercise of a court's inherent powers to carry out judicial functions must be singularly mindful of the equally unique authority of the legislative and executive branches of government to carry out their constitutional functions. *Id.* at 358–59.

■ Respondent Barlow seeks a court order to be issued to an agent of the executive branch to expunge certain records which the agent has been mandated by the legislative branch to keep for at least 5 years. There is no basis for the intrusion of inherent judicial power here. Here, too, any benefit to the respondent from ex-

pungement of his record is outweighed by the disadvantage to the public interest, and no infringement of any constitutional rights is involved.

Reversed.