The evidence the State relies on to support Clark's aiding and abetting conviction is the same circumstantial evidence the State relies on in support of Clark's conspiracy conviction. Again, there is no direct evidence of Clark's involvement in Officer Sackett's shooting. As discussed above, the evidence of Clark's presence at United Black Front meetings, his agreement with Reed's statements about killing a police officer, statements of his own about black power and self-defense, and Clark's close relationship with Reed, standing alone, does nothing more than suggest that Clark is guilty because of his association with Reed and is insufficient to support an inference that Clark played a knowing role in the shooting of Officer Sackett.

**STATE of Minnesota, Respondent,**

v.

**S.L.H., Appellant.**

No. A06–1750.

Supreme Court of Minnesota.

Sept. 4, 2008.

---

7. Because I would reverse Clark's convictions, I would not reach the other issues raised by Clark on appeal.

Kim Ruckdaschel–Haley, Karla M. Vehrs, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Roberta B. Walburn, Anne M. Lockner, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, for amicus curiae Council on Crime and Justice.

Daniel L. Gerdts, Brink & Gerdts, P.A., Minneapolis, MN, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

Lindsay W. Shaw, St. Paul, MN, Charles H. Thomas, Mankato, MN, for amicus curiae Southern Minnesota Regional Legal Services, Inc.

## OPINION

GILDEA, Justice.

Appellant S.L.H. filed a petition for expungement of the criminal records related to her fifth-degree possession of a controlled substance conviction on the ground that expungement was necessary for her to achieve her employment goals. The district court granted S.L.H.'s petition as to her criminal records held by the judicial branch but denied her petition as to her criminal records held outside the judicial branch. The court of appeals affirmed the district court. Because we conclude that the district court did not err in declining to exercise inherent authority to expunge the records at issue, we affirm.

S.L.H. was charged with two counts of second-degree controlled substance crime in February 1992, when she was 20 years old. The complaint alleged that a police officer found 17 grams of cocaine in plain view in a vehicle occupied by S.L.H. and operated by T.E.H. in Robbinsdale, Minnesota. S.L.H. pleaded guilty to fifth-degree felony possession of a controlled substance in violation of Minn.Stat. § 152.025, subd. 2(1) (2006). The district court stayed imposition of S.L.H.'s sentence and placed her on probation for 3 years. The record indicates that upon completion of her 3-year probationary term, S.L.H.'s offense was deemed a misdemeanor. *See* Minn. Stat. § 609.13, subd. 1(2) (2006).

S.L.H. filed her first petition for expungement in September 2000, but it was denied by the district court.[1] On May 4, 2006, S.L.H. filed another petition for expungement of the criminal records related to her 1992 controlled substance offense. In her petition, S.L.H. stated that she is a single parent who is solely responsible for supporting her four children and claimed that expungement would enable her to "be better able to support [her] family" and to "be a more productive member of society." S.L.H. explained that she desired to become a Head Start teacher or a medical assistant but that she would be unable to achieve either of these goals absent expungement of her criminal records. Hennepin County, the City of Crystal, and the Minnesota Bureau of Criminal Apprehension objected to S.L.H.'s expungement petition.

1. S.L.H. was arrested in December 2004 in connection with the arrest of T.E.H., but she was neither charged with nor indicted for any crime. At S.L.H.'s request, records of her arrest were expunged by the executive branch pursuant to Minn.Stat. § 299C.11(b) (2006), which provides for expungement of arrest records where the arrested individual has not been convicted of a felony or gross misdemeanor within 10 years and either (1) "all charges were dismissed prior to a determination of probable cause" or (2) the individual was neither charged nor indicted.

At her expungement hearing on July 6, 2006, S.L.H. requested expungement of all records related to her 1992 controlled substance offense or, in the alternative, expungement of the judicial branch records related to that offense. On July 18, 2006, the district court found that the benefit of expungement to S.L.H. outweighed the disadvantage to the public from eliminating her records and ordered that all judicial branch records concerning the offense be sealed. The district court also concluded that S.L.H.'s constitutional rights had not been violated and held that "[w]here there is no infringement of the petitioner's constitutional rights, the judicial branch does not have the authority to order non-judicial records sealed in situations where the court used its inherent authority to expunge a record."

S.L.H. appealed the district court's conclusion that her constitutional rights had not been violated and its denial of her petition as to her criminal records held outside the judicial branch. The court of appeals held that the district court correctly determined that S.L.H.'s constitutional rights had not been violated and "that, absent a constitutional violation, it had no authority to expunge the non-judicial records." *State v. S.L.H.*, No. A06–1750, 2007 WL 2769652, at *2 (Minn.App. Sept.25, 2007). Noting that "criminal records maintained by the executive branch, or non-judicial criminal records, implicate the separation of powers doctrine," the court

of appeals concluded "that a court's inherent authority to expunge non-judicial records extends to executive branch records only when executive agents abuse their discretion or otherwise infringe on a petitioner's constitutional rights." *Id.* at *1. The court of appeals therefore affirmed the district court. *Id.* at *1, 3. We granted S.L.H.'s petition for review.

## I.

■ There are two bases for the expungement of criminal records in Minnesota–Minn. Stat. ch. 609A (2006),[2] and the inherent judicial authority of the courts. *State v. Ambaye,* 616 N.W.2d 256, 257 (Minn.2000). S.L.H. does not claim that she is entitled to statutory expungement; she argues instead that the district court possessed inherent authority to order the expungement of her criminal records held outside the judicial branch. The judiciary possesses inherent authority to expunge criminal records when expungement is "necessary to prevent serious infringement of constitutional rights." *State v. C.A.,* 304 N.W.2d 353, 358 (Minn.1981). But S.L.H. concedes that there is no constitutional violation before us. The question presented in this case therefore is whether, in the absence of a violation of constitutional rights, the district court erred when it did not invoke inherent authority to order the expungement of S.L.H.'s criminal records held outside the judicial branch.[3]

---

2. Specifically, in section 609A.02, the legislature provided for the expungement of records related to certain controlled substance crimes, convictions of juveniles who were prosecuted as adults, and certain criminal proceedings that did not result in a conviction.

3. Citing *State v. Schultz,* 676 N.W.2d 337, 345 (Minn.App.2004), the district court concluded that in the absence of a violation of constitutional rights, "the judicial branch does not have the authority to order non-judicial rec-

ords sealed" pursuant to its inherent authority. In affirming the district court, the court of appeals likewise cited *Schultz,* 676 N.W.2d at 343, as well as its earlier decision in *State v. T.M.B.,* 590 N.W.2d 809, 811–13 (Minn. App.1999), *rev. denied* (Minn. June 16, 1999). *S.L.H.,* 2007 WL 2769652, at *1. Broadly read, *Schultz* and *T.M.B.* stand for the proposition that the judiciary's inherent authority does not extend to records held outside the judicial branch in the absence of a constitutional violation or the abuse of discretion by

■ The judiciary's inherent authority "grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government." [4] *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. 172, 180, 241 N.W.2d 781, 786 (1976). In order for a court to exercise its inherent authority, however, "the relief requested by the court or aggrieved party [must be] necessary to the performance of the judicial function as contemplated in our state constitution." *Id.* at 181, 241 N.W.2d at 786. We do not resort to inherent authority to serve the "relative needs" or "wants" of the judiciary, but only for "practical necessity in performing the judicial function." *Id.* at 181, 241 N.W.2d at 786; *see also In re Office of Dist. Pub. Defender*, 373 N.W.2d 772, 775 n. 1 (Minn.1985) (rejecting the argument that the judges of the First Judicial District possessed inherent authority to withdraw from the public defender system because the "case involve[d] 'relative needs or judicial wants,' rather than action necessary to the preservation of the judicial branch of government"). Accordingly, the judiciary's inherent authority " 'governs that which is essential to the existence, dignity, and function of a court because it is a court.' " *C.A.*, 304 N.W.2d at 358 (quoting *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. at 176, 241 N.W.2d at 784).

## A.

We recognized in *C.A.* the relevance of the judiciary's inherent authority in the context of expungement of criminal records. *Id.* Because S.L.H. relies extensively on *C.A.* in contending that the district court should have ordered the expungement of her criminal records held outside the judicial branch, we turn next to a discussion of that case.

In *C.A.*, the petitioner had been convicted of "consensual sodomy" and temporarily committed to the state hospital in St. Peter and to the state correctional facility in Stillwater. *Id.* at 355. After his conviction was set aside, the petitioner sought "wide-ranging" relief, requesting that "every local or state government record documenting the fact of his arrest, trial and conviction" be sealed, returned, or erased and that "public officials and employees [be] stopped from divulging these facts." *Id.* The district court concluded that Minn. Stat. § 299C.11 (1980) authorized none of the petitioner's requests except his request that the county sheriff return the petitioner's identification data.[5] *Id.* at 356–57.

officials in the other branches of government. But the court of appeals has not consistently applied this rule. *See, e.g., State v. P.A.D.*, 436 N.W.2d 808, 810 (Minn.App.1989), *rev. denied* (Minn. May 12, 1989) ("[C]ourts are [not] precluded from ordering that records and materials controlled by the other two branches of government be returned or sealed, if doing so is necessary or conducive to fashioning a meaningful remedy."). We need not use this case as a vehicle to comment further on the court of appeals' conflicting rules because, as set forth below, a broad rule is not necessary for the resolution of this case.

4. The Minnesota Constitution provides for the division of power among three branches of government as follows: "The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1.

5. Minnesota Statutes § 299C.11 (1980) provided as follows:

Upon the determination of all pending criminal actions or proceedings in favor of the arrested person, he shall, upon demand, have all ... identification data, and all copies and duplicates thereof, returned to him, provided it is not established that he has been convicted of any felony, either within

We affirmed the district court "in all respects" but went on, in dicta, to provide "future guidance" regarding inherent expungement authority, noting that "it is within the power of the courts to grant broader relief" than had been granted in that case. *Id.* at 357.

Before examining the entities that the petitioner in *C.A.* sought to subject to the requested expungement order, we first identified the judicial function at issue. We had to identify this judicial function because, as noted above, the inherent authority of the judiciary is limited to those functions that are " 'essential to the existence, dignity, and function of a court because it is a court.' " *Id.* at 358 (quoting *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. at 176, 241 N.W.2d at 784). The judicial function at issue in *C.A.* was that of controlling "court records and agents of the court in order to reduce or eliminate unfairness to individuals." *Id.*

We explained that in addition to the use of expungement to remedy constitutional violations, "[u]nder appropriate circumstances" the judiciary's inherent authority "extends to the issuance of expungement orders affecting court records and agents of the court." [6] *Id.; see also Barlow v. Comm'r of Pub. Safety*, 365 N.W.2d 232, 234 (Minn.1985) (discussing *C.A.*, 304 N.W.2d at 358). We did not further define what constitutes "appropriate circumstances."

But we did say that in a case where such "appropriate circumstances" are present, "the court must decide whether expunge-

ment will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." *C.A.*, 304 N.W.2d at 358. Counseling restraint in the exercise of the judiciary's inherent expungement authority, we explained that "this authority of the court extends only to its unique judicial functions," and that "courts must proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions." *Id.* at 358–59.

Continuing in dicta, we then applied these principles to the specific requests at issue in *C.A.* For example, we noted that the court's inherent authority could extend to the district court clerk and others who acted as officers of the court so that the court could "control the use of its internal records" and "internal processes." *Id.* at 360–61. But we stated that the court's inherent authority could not extend to "officials at the Minnesota Security Hospital at St. Peter" because "[t]he hospital is subject to the executive branch of government." *Id.* at 361. Similarly, we stated that the petitioner's request pertaining to his file at the correctional facility where he was incarcerated would fall outside the scope of the court's inherent authority because "[t]he correctional facility is a component of the executive branch of government and, as such, is not generally subject

or without the state, within the period of ten years immediately preceding such determination.

**6.** In *In re R.L.F.*, 256 N.W.2d 803, 808 (Minn. 1977), we held that inherent expungement authority "is limited to instances where the petitioner's constitutional rights may be seriously infringed by retention of his records."

We seemingly removed this limitation in our dicta in *C.A.* by distinguishing *R.L.F.* on the basis that "[w]e were not there presented with the issue, to the degree reflected here, of inherent power enabling courts to grant relief when it is necessary to the performance of their unique judicial functions." 304 N.W.2d at 358.

to the court's inherent power to control judicial records." *Id.* at 362.

## B.

■ S.L.H. contends that *C.A.* compels us to conclude that the district court erred in declining to exercise inherent authority to expunge her criminal records held outside the judicial branch. We disagree.

*C.A.* requires that we first identify the judicial function implicated in S.L.H.'s request. *Id.* at 358. In *C.A.*, the judicial function at issue was "reduc[ing] or eliminat[ing] unfairness to individuals" that could arise if court records, records related to the court process, or records used by agents in that process were used in a way that undermined the benefit to the petitioner of having his conviction set aside. *Id.* Because the petitioner's conviction had been set aside, expungement of records relating to that conviction could be viewed as being closely tied to the core judicial function of granting full relief (and thus "eliminat[ing] unfairness") to the petitioner. *See id.*

Although we did not explain in *C.A.* what constitutes the "appropriate circumstances" in which a court may exercise its inherent expungement authority, it is clear that the expungement requested must be "necessary to the performance of [the court's] unique judicial functions." *Id.* The unfairness concern at issue in *C.A.*—criminal records negatively impacting the petitioner even after his conviction had been set aside—is not implicated in the same way in this case because S.L.H. continues to stand convicted of the controlled substance crime. Because S.L.H.'s conviction has not been set aside, the expungement of her criminal records held outside the judicial branch is not necessary to grant her full relief.

The facts of this case are actually closer to those of *Barlow*, in which the petition-

er's driving privileges had been administratively revoked after he was arrested on suspicion of driving under the influence. 365 N.W.2d at 233. The revocation was judicially rescinded after an implied consent hearing, but the petitioner pleaded guilty to a reduced charge of careless driving. *Id.* The petitioner subsequently sought a court order that would "remov[e] from the records of the Commissioner of Public Safety any reference to [his] driver's license having been revoked and then reinstated." *Id.* The district court issued such an order, and the court of appeals affirmed. *Id.* We reversed. *Id.* at 235.

We first held in *Barlow* that there was no statutory basis for the district court to order the expungement of the petitioner's criminal records. *Id.* at 233–34. We next considered whether the district court could have expunged the records in the exercise of its inherent authority. Noting that the petitioner had not made a showing of a constitutional violation, we observed that "[h]is only claim is that retention in the records of his rescinded revocation will make it more difficult and expensive for him to obtain auto insurance." *Id.* at 234. Even though the revocation of Barlow's license had been rescinded, we emphasized that he had pleaded guilty to careless driving, a matter that "presumably [was] of record." *Id.* Thus, the facts of *Barlow* did not raise the fairness concern that was implicated in *C.A.*, where the petitioner's conviction had been set aside.

As in *Barlow*, this case does not seem to implicate a core judicial function or to present the "appropriate circumstances" we discussed in *C.A.*, 304 N.W.2d at 358. Unlike the petitioner in *C.A.*, S.L.H. does not argue that she is entitled to expungement because her conviction was set aside. S.L.H. instead seeks expungement on the ground that it is necessary for her to achieve her employment goals. But help-

ing individuals achieve employment goals is not " 'essential to the existence, dignity, and function of a court because it is a court.' " *C.A.*, 304 N.W.2d at 358 (quoting *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. at 176, 241 N.W.2d at 784). It may be a matter of "relative needs or judicial wants," but it cannot be said to be "necessary to the performance of the judicial function as contemplated in our state constitution." *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. at 181, 241 N.W.2d at 786; *see also In re Quinn*, 517 N.W.2d 895, 900 (Minn.1994) ("[W]e reject the contention that expungement and sealing was justified in this case to protect a 'unique judicial function' . . . .").

■ In reaching the conclusion that a core judicial function is not presented in this case, we are guided by our mandate in *C.A.* that "courts must proceed cautiously" when invoking inherent authority. 304 N.W.2d at 359. We proceed cautiously because our separation of powers jurisprudence requires that we give "due consideration" to the "equally important executive and legislative functions." *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. at 182, 241 N.W.2d at 786. Accordingly, "[i]t is not for the court to lightly use judicial authority to enforce or restrain acts which lie within the executive and legislative jurisdictions of another department of the state." *Granada Indep. Sch. Dist. No. 455 v. Mattheis*, 284 Minn. 174, 180, 170 N.W.2d 88, 91 (1969). We have instead recognized what is, in essence, a presumption in favor of the other branches of government when there is a possible separation of powers conflict between the branches:

> The fact that under the constitution the responsibility of maintaining the separa-

tion in the powers of government rests ultimately with the judiciary should make a court, from whose decision there is no appeal, hesitate before assuming a power as to which there is any doubt, and resolve all reasonable doubts in favor of a co-ordinate branch of the government, unless such conclusion leads to a palpable wrong or absurdity.

*Gollnik v. Mengel*, 112 Minn. 349, 350–51, 128 N.W. 292, 292 (1910). Such restraint is required because "one of the highest duties resting upon the judicial department of the state is to refrain from trespassing upon the domain assigned to either of the other departments." *Id.* at 350, 128 N.W. at 292.

Of particular relevance to our inquiry in this case is the fact that the legislature has mandated that certain information contained in S.L.H.'s criminal records held outside the judicial branch be kept open to the public. The Minnesota Government Data Practices Act (MGDPA) "establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public." Minn.Stat. § 13.01, subd. 3 (2006). More specifically, "data *created or collected by law enforcement agencies* which documents any actions taken by them to cite, arrest, incarcerate or otherwise substantially deprive an adult individual of liberty shall be public at all times in the originating agency." [7] Minn.Stat. § 13.82, subd. 2 (2006) (emphasis added).

The MGDPA also provides as follows:

> Criminal history data maintained by agencies, political subdivisions and state-

---

7. Although a prior version of the MGDPA was in effect when we rendered our decision in *C.A.*, it did not contain the Minn.Stat. § 13.82, subd. 2 (2006), provision regarding law enforcement agency data. *See* Minn.Stat. §§ 15.1611–15.1698 (1980).

wide systems are classified as private, ... except that data created, collected, or maintained by the Bureau of Criminal Apprehension that identify an individual who was convicted of a crime, the offense of which the individual was convicted, associated court disposition and sentence information, controlling agency, and confinement information are public data for 15 years following the discharge of the sentence imposed for the offense.

Minn.Stat. § 13.87, subd. 1(b) (2006). Therefore, under section 13.87, subd. 1(b), records created, collected, and maintained by the BCA that relate to a defendant's conviction, sentence, and confinement are public for 15 years following the discharge of a defendant's sentence. Because 15 years have not lapsed since the discharge of S.L.H.'s sentence, her criminal history data maintained by the BCA is subject to the statute.[8]

 The expungement of S.L.H.'s criminal records held outside the judicial branch would effectively override the legislative determination that some of these records be kept open to the public. Because inherent judicial authority is derived from "the constitutional doctrine of separa-

tion of powers" and "is grounded in judicial self-preservation," *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. at 176–77, 241 N.W.2d at 784, it can be neither augmented nor diminished by legislative acts. Nevertheless, in light of the deference that courts are to afford the other branches of government, the judiciary should exercise restraint before invoking inherent expungement authority over records held outside the judicial branch where statutes require that some of the records be kept open to the public. *See Barlow*, 365 N.W.2d at 234 ("[A]ny exercise of a court's inherent powers to carry out judicial functions must be singularly mindful of the equally unique authority of the legislative and executive branches of government to carry out their constitutional functions."). While the legislature's "expression of public policy pertaining to access to governmental records" may not be determinative, "the exercise of inherent authority must be delineated in such a way as to accommodate those policies where appropriate." *C.A.*, 304 N.W.2d at 359. S.L.H. does not articulate, and we fail to see, how the legislature's policies could be accommodated if a court were to expunge records held outside the judicial branch that the legislature has classified as public.[9]

8. Another statute potentially implicated by the judiciary's exercise of its inherent expungement authority over S.L.H.'s criminal records held outside the judicial branch is the Department of Human Services Background Studies Act, which requires the Commissioner of Human Services to conduct a background study of employees of programs that provide DHS-licensed services. Minn.Stat. § 245C.03, subd. 1 (2006). An individual is disqualified from working in positions involving direct contact with recipients of licensed services if the background study reveals, by a preponderance of the evidence, that the individual has committed any of several delineated criminal acts. Minn.Stat. § 245C.14, subd. 1(a)(2) (2006). The Act prescribes a 15–year disqualification period (measured from the discharge of the sentence) for an individual who has

"committed a felony-level violation of" crimes under chapter 152. Minn.Stat. § 245C.15, subd. 2 (2006). Because S.L.H. pleaded guilty to a felony controlled substance offense under chapter 152, this statute may disqualify her from working in many health care positions.

9. We note that the legislature has recently been examining the question of expungement of criminal records. For example, in 2007 the legislature created the Collateral Sanctions Committee to study the impact of a criminal record on the ability to obtain and retain employment. 2007 Collateral Sanctions Comm., *Criminal Records and Employment in Minnesota* 3 (2008), *available at* http://www.msgc.state.mn.us/projects/ collateral_sanctions/ Collateral_Sanctions_Re-

Because S.L.H. has not demonstrated that expungement of her criminal records held outside the judicial branch is necessary to the performance of a core judicial function and recognizing the restraint our separation of powers jurisprudence counsels with regard to the exercise of inherent authority, we hold that the district court did not err in declining to exercise inherent authority to expunge S.L.H.'s criminal records held outside the judicial branch.

Affirmed.

Concurring, ANDERSON, PAUL H., PAGE, and MEYER, JJ.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring).

I agree with the majority that S.L.H. is not entitled to expungement of her criminal records that exist outside of the judicial branch. But I write separately to clarify my understanding of the scope of our inherent authority. More particularly, I have some concerns about certain aspects of the majority's analysis of *State v. C.A.*, 304 N.W.2d 353 (Minn.1981). Therefore, I believe a review of what we did in *C.A.* will help to define the scope of our expungement authority.

The appellant in *C.A.* had been charged and convicted of consensual sodomy, a gross misdemeanor. *C.A.*, 304 N.W.2d at 355. After C.A. was committed to a state security hospital and a correctional facility, we set aside his conviction and remanded his case for a new trial. *Id.* The charges against C.A. were later dropped and he was never retried. *Id.*

C.A. subsequently moved to expunge records regarding his arrest, charges, and trial, as well as to forbid several officials and institutions from disclosing information about his case. *Id.* at 356. Specifically, he requested that the district court enter expungement and non-disclosure orders that would extend to (1) the county sheriff; (2) the county attorney; (3) the police department; (4) the state bureau of criminal apprehension (BCA); (5) the clerk of the district court; and (6) the hospital and the correctional facility in which C.A. was committed after his conviction. *Id.* at 356–57. The court granted C.A.'s request that the sheriff return C.A.'s identification data, such as fingerprints and photographs. *Id.* at 357. The court denied all other requests for relief.

On appeal, we affirmed the district court. *Id.* But we began our opinion with the caveat that "[a]lthough we affirm the trial court's denial of the bulk of C.A.'s [expungement] requests as stated in his motions, *we do not imply that relief may never be properly granted.*" *Id.* at 355 (emphasis added). We went on to state that "it is within the power of the courts to grant broader relief than was [given to C.A.]." *Id.* at 357.

port_2008.pdf. In its 2008 report to the legislature, the committee noted that "[t]he Criminal and Juvenile Justice Information Policy Group, Criminal and Juvenile Justice Information Task Force, and CriMNet Program Office have been working on the complexities of sealing criminal records and background checks." *Id.* at 30. Finally, a bill amending the statutory expungement scheme of Minn. Stat. ch. 609A was introduced in the Minnesota Senate and referred to the Judiciary Committee during the last session, but the bill did not move out of committee. S.F. 3442, 85th Minn. Leg.2008. Similarly, a companion bill was introduced in the Minnesota House but did not move out of the Criminal Records Relief Subcommittee of the Public Safety and Civil Justice Committee. H.F. 3859, 85th Minn. Leg.2008.

In *C.A.*, we defined the circumstances in which a criminal defendant may be entitled to expungement. *Id.* We recognized that "[b]eyond the outlines of statutory authority [to expunge records], courts have inherent authority to grant relief which might be called expungement." *Id.* One aspect of this inherent authority is when expungement is necessary to prevent the serious infringement of constitutional rights. *Id.* at 358. But because such grounds for expungement were not raised in *C.A.*, we discussed "yet another aspect of inherent authority held by courts"—the power "enabling courts to grant relief when it is necessary to the performance of their unique judicial functions." *Id.* We stated that this aspect of our inherent authority is "well established," and we defined this authority as governing " 'that which is essential to the existence, dignity, and function of a court because it is a court.' " *Id.* (quoting *In re Clerk of Lyon County Courts' Comp.*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976)).

We then stated that "[u]nder appropriate circumstances" this inherent authority extends to issuing expungement orders affecting court records and agents of the court. *Id.* The test, we said, is whether expungement will give the petitioner a benefit that is proportionate to the disadvantages to the public from no longer having the record and the burden on the court in issuing, enforcing, and monitoring an expungement order. *Id.* We warned that courts must "proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions." *Id.* at 359.

We then analyzed each of C.A.'s claims. *Id.* at 360. C.A. first requested that the district court order that the sheriff return C.A.'s identification data. The court granted this request, and we affirmed. *Id.* C.A. further requested that the sheriff and his agents be forbidden from disclosing the fact of C.A.'s arrest and charge. *Id.* The district court denied the request. *Id.* We concluded that granting such an order is within the court's inherent authority. *Id.* We then explained that the sheriff falls under our inherent power because "the sheriff often acts as an officer of the court." *Id.* Nevertheless, we affirmed the denial of the request, noting that a major flaw in C.A.'s motions was the failure to identify with specificity the individuals and documents subject to the order. *Id.* But we went on to state that if the court had granted that request, we would have affirmed. *Id.*

C.A. next requested that the district court forbid several public officials from disclosing information about C.A.'s arrest, charge, and trial. *Id.* These officials included individuals in the county attorney's office, the police department, the BCA, the district court clerk, the Minnesota Security Hospital at St. Peter, the state board of corrections, and the Minnesota correctional facility at Stillwater. We concluded that "[s]ome of these officials or institutions would have been within the reach of the court's inherent power to control internal processes." *Id.* But we again affirmed the district court's denial of relief on the ground that C.A. had failed to make his requests with the necessary specificity. *Id.*

Even though we affirmed the district court's denial of relief, we went on to elaborate on our inherent authority with respect to the various public officials and institutions. We first said that, "[w]ithout question," the clerk of the district court could be subject to our inherent authority power. *Id.* We also said that county attorneys or other attorneys are within the inherent authority of the courts. *Id.* We

further stated that "[n]amed individuals in police departments, officials in charge of correctional facilities, or members of the board of corrections could be subject to orders not to disclose only to a limited extent." *Id.* at 361. We noted that these governmental entities are part of either the executive branch of government, or its political subdivisions as defined by the legislature. *Id.* But we went on to state that the courts may have authority over the individuals in those institutions that are responsible for reporting information about arrests, charges, trials, and incarcerations to the BCA. *Id.* We also concluded that a petitioner may legitimately move the court to order the sheriff to request that the FBI return the petitioner's identification data. *Id.* But we drew the line at regulating records at the Minnesota Security Hospital and petitioner's file at the state correctional facility at Stillwater. *Id.* at 361, 362. We concluded that both institutions are components of the executive branch of government. *Id.* We also noted that an order affecting the Minnesota Security Hospital would concern medical records, which are confidential. *Id.* at 362.

Here, S.L.H. did not request relief that extended as broadly as that requested by C.A. Rather, S.L.H. asked the district court to expunge only her records relating to her 1992 controlled substance offense. I agree with the majority that S.L.H. is not entitled to the relief she requests, but given the majority's analysis of *C.A.,* I write separately because I am concerned that our inherent authority, as explained in *C.A.,* could in the future be construed more narrowly than it ought to be based on the wording of the majority opinion. Nevertheless, my concerns about a narrow reading of the majority's discussion of *C.A.* are mitigated, in part, by the fact that, after discussing *C.A.,* the majority goes on to analyze whether "appropriate circumstances" exist in S.L.H.'s case that would merit the use of the court's inherent authority to issue an expungement order extending beyond the judicial branch. Such an analysis is consistent with what we said in *C.A.*—our inherent authority to grant relief may extend to officials and institutions outside the judicial branch in "appropriate circumstances," when such relief " 'is essential to the existence, dignity, and function of a court.' " *Id.* at 358 (quoting *In re Clerk of Lyon County Courts' Comp.,* 308 Minn. at 176, 241 N.W.2d at 784).

PAGE, Justice (concurring).

I join in the concurrence of Justice Paul H. Anderson.

MEYER, Justice (concurring).

I join in the concurrence of Justice Paul H. Anderson.