*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1109**

Grant County Social Services, Natasha Kaiser,
OBO A.C.R.,
Ward of the Commissioner of the State of MN,
Respondent,

vs.

S. J. M.,
Appellant.

**Filed May 4, 2015
Affirmed
Hudson, Judge**

Grant County District Court
File No. 26-CV-13-214

Justin R. Anderson, Grant County Attorney, Elbow Lake, Minnesota (for respondent)

Christopher J. Cadem, Cadem Law Group, PLLC, Fergus Falls, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

Appellant challenges the denial of his motion to expunge the judicial records of an ex parte harassment restraining order issued against him. Appellant argues that the district court applied an incorrect standard of review to the expungement motion and that

the court should expunge the records using its inherent authority because his constitutional rights are infringed by the retention of the records and the benefit of expungement to him is commensurate with the disadvantages of eliminating the record. We affirm.

## FACTS

Respondent Grant County Social Services filed a Petition for a Harassment Restraining Order (HRO) against appellant S.J.M. on behalf of the minor child A.C.R.[1] The petition alleged that S.J.M. was a middle-aged male who knew A.C.R. when she resided with her biological mother and that S.J.M. sent A.C.R. gifts through social services; attempted to obtain A.C.R.'s contact information; made inappropriate comments to A.C.R.; and used a false name to send her a long Facebook message. The district court issued a temporary ex parte HRO valid for two years unless S.J.M. requested a hearing within 45 days, which S.J.M. did. At the hearing, the parties agreed that S.J.M. would have no further contact with A.C.R. and the district court dissolved the HRO without ruling on the merits.

S.J.M. subsequently moved the court to use its inherent authority to expunge the HRO petition and the ex parte HRO, claiming that they were libelous. A.C.R. took no position on the expungement. The district court denied S.J.M.'s motion, determining that his constitutional rights were not implicated; that the benefit of expungement to S.J.M. was not commensurate with the disadvantages to the public and the burden on the court;

---

[1] For ease of reference, this opinion will refer to respondent as A.C.R.

and that S.J.M.'s claims that A.C.R.'s statements were libelous were not relevant to an expungement request. This appeal follows.

**D E C I S I O N**

S.J.M. argues that the district court abused its discretion by denying his motion to expunge the HRO petition and the ex parte HRO. The district court has inherent power that "governs that which is essential to the existence, dignity, and function of a court because it is a court." *In re Clerk of Lyon Cnty. Court's Comp.*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976). The court may exercise its inherent power to expunge records where their retention seriously infringes a petitioner's constitutional rights. *State v. M.D.T.*, 831 N.W.2d 276, 280 (Minn. 2013). Alternatively, the court may use its inherent authority "to control court records . . . in order to reduce or eliminate unfairness to individuals, even though the unfairness is not of such intensity as to give a constitutional dimension." *State v. C.A.*, 304 N.W.2d 353, 358 (Minn. 1981). We review the "district court's exercise of its inherent authority to expunge records that are located within the judicial branch [as] a matter of equity . . . under an abuse-of-discretion standard of review." *State v. N.G.K.*, 770 N.W.2d 177, 180 (Minn. App. 2009). The abuse-of-discretion standard extends to the review of an expungement denial where the petitioner claims his constitutional rights are violated by the retention of records. *State v. H.A.*, 716 N.W.2d 360, 363 (Minn. App. 2006). We will set aside underlying findings of fact only if they are clearly erroneous. *N.G.K.*, 770 N.W.2d at 180.

Relying on *Barlow v. Comm'r of Pub. Safety*, 365 N.W.2d 232, 234 (Minn. 1985), the district court concluded that its inherent powers to expunge even a civil file "are

3

properly exercised only where a person's constitutional rights might be seriously infringed by retention of public records." S.J.M. argues that (1) the district court's conclusion misstates the law and (2) petitions seeking only judicial record expungement are subject to a "lower standard" than those seeking to expunge executive level records. S.J.M. cites no authority for his second proposition, and therefore we reject it. *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation). As to his first claim, the district court's statement—standing alone—does misstate the law. *See C.A.*, 304 N.W.2d at 358 (stating that a court's inherent authority to control records may apply even where there is not a constitutional dimension). But we note that later in its order, the district court correctly cites and addresses its inherent authority to expunge records, even when the claim does not rise to the level of a constitutional violation. In addition, we observe that the district court was faced with an unusual procedural and substantive posture. Unlike a motion for the expungement of criminal or eviction records, there is no statutory basis for a petitioner to seek expungement of HRO records. *See* Minn. Stat. §§ 609A.01-.04 (2014) (detailing the grounds and procedures for expunging certain types of criminal records, including the violation, but not the issuance, of an HRO); Minn. Stat. § 484.014 (2014) (explaining the process for expunging eviction case court files). Nor have we found any relevant caselaw regarding the expungement of civil HRO records. In the absence of such guidance, the district court applied the criminal expungement standard and we see no error requiring correction.

S.J.M. next asserts that the creation and retention of the HRO records infringes upon his constitutional rights. We disagree. S.J.M. alleges that the retention of the records violates his right to due process because the harassment claims were not proven and he had no opportunity to rebut the claims. But the HRO statute specifically allows for the issuance of an ex parte HRO on "reasonable grounds to believe that [a party] has engaged in harassment" prior to a hearing on the merits. Minn. Stat. § 609.748, subd. 4(b), (c) (2014) (allowing the court to issue an ex parte HRO without notice to the responding party). And S.J.M. does not contest the constitutionality of this statute. He next claims that his constitutional rights are infringed upon because the statements are libelous and he contends that an expungement is the only available remedy to address the infringement. But S.J.M. has not proven that the statements were libelous—or even false—such that he is entitled to any remedy. Instead, the ex parte HRO was dismissed with the agreement that S.J.M. would "have no contact whatsoever" with A.C.R.; no decision was made on the merits of those allegations.

For the first time on appeal, S.J.M. also argues that the HRO violated his constitutional interest in freedom of association with A.C.R. But freedom of association is not relevant to the retention of records and we generally do not address constitutional issues raised for the first time on appeal. *See In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (declining to address a constitutional issue raised for the first time on appeal from a termination of parental rights).

As noted earlier, even where a constitutional right is not infringed upon, the court may use its inherent authority to expunge records, including civil case records. *See*

5

*Barlow*, 365 N.W.2d at 234 (applying the inherent-authority expungement basis to appellant's request to expunge records of his driver's license revocation). In making this determination, we first consider whether the requested relief is necessary to the performance of the judicial function. *State v. S.L.H.*, 755 N.W.2d 271, 275 (Minn. 2008). "Inherent judicial power governs that which is essential to the existence, dignity, and function of a court because it is a court." *C.A.*, 304 N.W.2d at 358 (quotation omitted). The court does not "resort to inherent authority to serve the 'relative needs' or 'wants' of the judiciary, but only for 'practical necessity in performing the judicial function.'" *S.L.H.*, 755 N.W.2d at 275 (quoting *In re Clerk of Lyon Cnty.*, 308 Minn. at 181, 241 N.W.2d at 786).

The court's judicial function includes the power to "control court records and agents of the court in order to reduce or eliminate unfairness to individuals, even though the unfairness is not of such intensity as to give a constitutional dimension." *C.A.*, 304 N.W.2d at 358. The court may use its inherent authority to expunge judicial records when "the relief requested by . . . the aggrieved party [is] necessary to the performance of the judicial function as contemplated in our state constitution." *S.L.H.*, 755 N.W.2d at 275 (quotation omitted). Here, we conclude that a request for expungement of judicial records related to an ex parte HRO can be a type of relief necessary for the performance of a judicial function and therefore that a request for an expungement can be an appropriate circumstance for the court to invoke its inherent authority to control its own records.

6

We must then decide whether S.J.M.'s request for expungement, if granted, "will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring the order." *Barlow*, 365 N.W.2d at 234 (quotation omitted). There are five factors for the district court to consider in determining whether the benefits are commensurate with the disadvantages. *H.A.*, 716 N.W.2d at 364. But only three of those factors apply to HRO records: (1) "the extent that a petitioner has demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged," (2) "the potential risk that the petitioner poses and how this affects the public's right to access the records," and (3) "other objective evidence of hardship under the circumstances." *Id.*

In *Barlow*, the petitioner sought to expunge his driver's license revocation records after the revocation was rescinded. 365 N.W.2d at 233. The supreme court observed that even though the petitioner's license was reinstated, there may have been grounds for the initial revocation. *Id.* at 234; *see also S.L.H.*, 755 N.W.2d at 277 (noting the difference between the unfairness of retaining harmful records after a conviction has been set aside as opposed to where a conviction was not challenged). The court held that petitioner's potential increased insurance expenses did not rise to a constitutional violation and that there was "no basis for the intrusion of inherent judicial power." *Barlow*, 365 N.W.2d at 234.

S.J.M. argues that the benefit to him of expunging the HRO records is commensurate with the disadvantage to the public in eliminating the record and the

7

burden on the court in monitoring the order. While he claims that it is common knowledge that an HRO record will affect his housing and employability—more so than the *Barlow* petitioner who only speculated that his insurance rates would increase—we are not persuaded. S.J.M. has not submitted any evidence demonstrating that his housing or employment has actually been affected. *See N.G.K.*, 770 N.W.2d at 180 ("[A] petitioner may not justify expungement with 'speculative' evidence.").

S.J.M. also argues that it is unfair for the court to maintain the HRO petition because it contains false facts and it does not allege that S.J.M. was previously asked to stop contacting A.C.R. But the record is clear that the ex parte HRO was vacated by agreement of the parties; the district court made no decision on the merits. And while S.J.M. claims that his contact with A.C.R. was innocuous, there is an advantage to the public in keeping records of an adult male's seemingly inappropriate contact with a teenage girl. Additionally, the dismissal included the agreement that S.J.M. would not contact A.C.R., an important record. S.J.M. does not document any other hardships associated with maintaining the record, other than speculative claims that the allegedly false statements will result in "embarrassment, ridicule, and defamation of character." While S.J.M. is correct that it would likely not burden the court to monitor the expungement, this does not tip the balancing test in his favor. We thus conclude that the benefit to S.J.M. is not commensurate with the disadvantage to the public and his request does not overcome the presumption of access to the records. *See Star Tribune v. Minn. Twins P'ship*, 659 N.W.2d 287, 295 (Minn. App. 2003) (holding that a presumption of access to judicial records exists under common law and the First Amendment).

8

Therefore, the district court did not abuse its discretion by denying the expungement request.

**Affirmed.**