*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0327**

In Re the Matter of:
Anne Ray Charitable Trust, a Minnesota charitable trust,
under agreement dated August 20, 1996 and
In Re the Matter of:
Margaret A. Cargill Foundation
under agreement dated July 6, 2001.

**Filed August 22, 2016
Reversed
Muehlberg, Judge**[*]

Hennepin County District Court
File Nos. 27-TR-CV-14-126, 27-TR-CV-14-127

Sarah E. Crippen, Daniel L. Grimsrud, Ashleigh M. Leitch, Best & Flanagan LLP, Minneapolis, Minnesota (for appellants Anne Ray Foundation and Margaret A. Cargill Foundation)

Lori Swanson, Attorney General, Ben Velzen, Sarah Gillaspey, Assistant Attorneys General, St. Paul, Minnesota (for amicus curiae State of Minnesota)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Muehlberg, Judge.

_____

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MUEHLBERG**, Judge

Appellants, two nonprofit corporations, challenge the district court's denial of their motion to vacate the portions of its orders requiring appellants to be court-supervised, arguing that the requirement exceeds the district court's statutory authority and that the district court lacks personal and in rem jurisdiction over them. Because the statutes provide that nonprofit corporations are subject to supervision by the attorney general, not by the courts, and because the district court lacked personal and in rem jurisdiction over appellants, we reverse the denial of appellants' motion to vacate.

## FACTS

Prior to her death in 2006, Margaret A. Cargill established the Anne Ray Charitable Trust (ARCT), which designated beneficiaries. Upon her death, another charitable trust, the Margaret A. Cargill Foundation (MACF), was established. ARCT and MACF (the trusts) have significant assets.

Two non-profit corporations, appellants the Anne Ray Foundation (New Corp) and the Margaret A. Cargill Foundation (MAC Corp) were incorporated under Minn. Stat. ch. 317A, subject to the regulatory authority of the attorney general (AG) under the Supervision of Charitable Trusts and Trustees Act (Charitable Trust Act) (Minn. Stat. §§ 501B.33-.45 (2014 and Supp. 2015)). In June 2014, the trustees of ARCT and MACF filed petitions for the district court's approval of the transfer of the trusts' assets, liabilities, and obligations to appellants, believing that the transfer was in the best interests of the

trusts' and appellants' charitable purposes. The trustees informed the court that they were not required to seek district court approval but were doing so voluntarily.

In July 2014, the AG's office submitted a letter making three recommendations, but stating no objection to the transfer. A district court referee directed a representative of the AG to attend the initial hearing on the trustees' petitions, and a deputy attorney general (DAG) did so. At the hearing, the referee asked the DAG if the AG's office recommended that appellants be subject to court supervision. The DAG replied, "I don't believe our office was recommending continued court supervision. . . . The answer is no." At the second hearing in December 2014, the referee asked the same question and the DAG again answered in the negative: the AG's office was not seeking court supervision of appellants.

In February 2015, the district court issued orders approving the transfer of the trusts' assets, liabilities, and obligations to appellants. The orders provided that the trusts would remain under court jurisdiction until the transfer and that appellants would be subject to the "provisions of Minn. Stat. § 501B, including annual reporting requirements." The orders did not mention court supervision of either the trusts or appellants; nor did they refer to Minn. Stat. § 501B.23 (2014) (stating that trustees of *express* trusts are subject to continuing court supervision and are required to file inventories with the court).[1]

In April 2015, the referee issued "Reminder[s]" telling the trusts that their inventories had not been filed with the court. The trusts responded by telling the referee

---

[1] As of January 1, 2016, Minn. Stat. § 501B.23 was recodified as Minn. Stat. § 501C.0205(b) (Supp. 2015) as part of the legislative revision of Minnesota trust law.

3

that they were not court supervised and were not required to file inventories with the court. The referee replied that the February 2015 orders stated "that the existing charities [i.e., the trusts] shall remain under court *supervision* . . . ." (Emphasis added.) However, the orders actually stated that the trusts would remain under court *jurisdiction*. The referee also stated that the February 2015 orders "[intend] that the new entities [i.e., appellants] remain subject to . . . continuing court supervision under § 501B.23 . . . ." when, in fact, appellants never were under court supervision. The trusts petitioned the district court for clarification of the February 2015 orders.

In July 2015, the district court issued amended orders that appellants "shall continue to be subject to this Court's *jurisdiction and supervision*, which upon transfer of assets to [them], shall include filing an inventory and annual accounts as provided in Minn. Stat. § 501B.23 . . . ."[2] (Emphasis added.)

In November 2015, appellants filed a motion in district court to vacate the parts of the July 2015 order imposing court supervision on them. Following a hearing, the district court denied the motion. Appellants challenge the denial, arguing that the district court has neither statutory authority nor inherent authority to order court supervision of appellants and that it has no personal or in rem jurisdiction over appellants.[3]

---

[2] Because the trusts were able to seek relief in the district court and then, if necessary, appeal, this court denied the trusts' petition for a writ of prohibition preventing enforcement of the amended orders. *See In re Anne Ray Charitable Trust et al., Petitioners*, No. A15-1415 (Minn. App. Oct. 6, 2015) (order).

[3] There is no respondent in this appeal. The AG's office filed an amicus curiae brief taking no position on the merits of this case but stating that neither the Minnesota Trust Code (Minn. Stat. ch. 501C (Supp. 2015)), nor the Nonprofit Corporation Act (Minn. Stat. ch. 317A (2014)), operates to the exclusion of the Charitable Trust Act.

**D E C I S I O N**

## I. Authority

Courts have both statutory and inherent judicial authority. *See State v. S.L.H.*, 755 N.W.2d 271, 274-75 (Minn. 2008) (noting, in the expungement context, that a court may expunge under its inherent judicial authority or statutory authority or both).

### A. Statutory Authority

Appellants, nonprofit corporations, argue that, because Minnesota statutes do not confer on district courts the authority to supervise nonprofit corporations, the district court lacks statutory authority to impose its supervision on them. "[S]tatutory construction is a question of law, which we review de novo." *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009).

In its July 2015 amended orders, the district court concluded that "assets held by [appellants] continue to be . . . subject to the provisions of Minn. Stat. § 501B" and required appellants to file with the court "an inventory and annual accounts as provided in Minn. Stat. § 501B.23 . . . ." But appellants were not formed under chapter 501B, governing express trusts; they were formed under chapter 317A, governing nonprofit corporations. Express trusts are supervised by the district court. *See, e.g.*, Minn. Stat. § 501B.16 (2014) (providing that trustees or those interested in a trust may petition the district court for orders in 23 enumerated cases); *see also* the Minnesota Trust Act, adopted on January 1, 2016, Minn. Stat. §§ 501C.0201-.0202 (Supp. 2015) (replacing Minn. Stat. §§ 501B.01-.25). Nonprofit corporations such as appellants, however, are supervised by the AG. *See, e.g.*, Minn. Stat. § 317A.811 (2014) (providing that nonprofit corporations must notify the AG

5

of their intent to dissolve, merge, or consolidate, or to transfer all or substantially all their assets).

At the December hearing on appellants' petitions, the referee, the DAG, and appellants' counsel addressed the issue of court supervision in connection with both New Corp and MAC Corp. As to New Corp, the following discussion occurred between appellants' counsel and the referee.

> Counsel: We have chosen to make a move . . . into a structure that brings us into the regulatory purview of the [AG]. I don't think we should be penalized for that.
>
> . . . [T]he Petition that we have put forward for the Court, along with the proposed order, comports with precisely the language in the instrument and the applicable law. And I'll say what the [DAG] has not said so far: They [i.e., the AG's office] have an obligation to object if our Petition is objectionable.
>
> . . . .
>
> Referee: Well, I deem the [DAG's] position as an objection.
> Counsel: . . . [The AG's office] has stated in writing and in this courtroom on more than one occasion that they do not object. . . . [T]hey did not object to our Petition and they have not . . . . [T]hey said . . . that they wanted the Court to make sure that it had satisfied itself that the governance structure that we were proposing was appropriate and sufficient. . . .
>
> . . . .
>
> And our board governance is sufficient and appropriate, and one of the reasons we know that is because they [the AG's office] haven't objected. They have a constitutional obligation to object if they find what we're doing to be inappropriate . . . and they're not doing it.

As to MAC Corp, this discussion occurred:

> Referee: . . . Where are you regarding that proposed order?
> Counsel: . . . [T]he IRS has now given us a determination letter that our organizational structure is acceptable to the IRS as a private foundation.

6

> So what that means is that . . . [the] foundation is subject to the IRS's rules related to a number of things, including governance.
>
> . . . .
>
> Referee: Now, the [] new entity [MAC Corp], that is something that will remain under the Court's supervision, also, correct?
>
> Counsel: No, no.
>
> . . . .
>
> DAG: No, I think it's going to be a new . . . nonprofit organization.
>
> Referee: Okay. And what about supervision by the [AG]?
>
> DAG: . . . [T]his organization would also be under the regulatory [supervision] of the [AG's] office under 317A and under 501B because it holds charitable assets and because under 317A it is a non-profit entity.

In the memoranda accompanying each order, the referee acknowledged that "[the DAG] indicated at the hearing that the [AG] does not object to the proposed order submitted by [appellants'] counsel," but also wrote, "It appears that the [AG] is unwilling to take a position on the approval of the formation of the [corporations] leaving the approval entirely resting with the Court." This misrepresents what the DAG actually said: having no objection to the formation of the corporations does not equate to being "unwilling to take a position" on their formation. The AG's function is to object when there is a basis for objection; it found no such basis here.

Moreover, counsel for appellants also noted that

> Margaret A. Cargill specifically said . . . that at the discretion of the trustees that the charitable trust can terminate and be distributed entirely to a qualified charity at the time that the trustees determine.
>
> This new entity, [MAC Corp] which has been approved by the IRS, is the qualified charity that is identified in the instrument.

7

"A charitable trust must be liberally construed by the courts so that the intentions of the donor are carried out when possible . . . ." Minn. Stat. § 501B.31, subd. 2 (Supp. 2015). "In cases arising under this section, the [AG] must be given notice of any court proceedings pursuant to section 501C.0203. The [AG] shall represent the beneficial interests in those cases and shall enforce affected trusts." Minn. Stat. § 501B.31, subd. 5 (Supp. 2015). There is no evidence that the trustor here intended the court to exercise supervision over any corporations to which the trustees transferred the trusts' assets.

This fact distinguishes this case from the case on which the district court relied, *In re Trust Under the Will of Fuller*, 636 N.E.2d 1333, 1342-43 (Mass. 1994) (holding that, when court-appointed trustees transferred trust assets to a corporation, the court was not deprived of jurisdiction over those trustees by a law giving the AG the duty of enforcing the application of funds given to public charities and preventing breaches of trust in their administration).[4] But in *Fuller*, the testatrix directed that the trustees be appointed by the court to carry out her directives. *Id*. at 1342.

> Respect for the testatrix's clear intent that there should be continued court supervision of her estate through the

---

[4] As a threshold matter, we note that *Fuller*, a Massachusetts state court case, is not dispositive of a Minnesota appellate court's decision. Moreover, *Fuller* does not represent the only point of view. *See, e.g.*, *Dodge v. Trustees of Randolph-Macon Woman's College*, 661 S.E.2d 805, 808 (Va. 2008) (rejecting the contention that Virginia law giving AG authority over charitable nonstock corporations "requires the application of trust law, rather than corporate law, to . . . a nonstock charitable corporation"); *In re Myra Foundation*, 112 N.W.2d 552, 556-57 (N.D. 1961) (holding that district court had no jurisdiction over a corporation formed under a will to use the residuary estate for the purpose for which the corporation was created because the corporation "does not hold the property in trust in the true sense of the term" but "holds the property as its own to be devoted to the purposes for which [the corporation] was formed").

> successive appointment and monitoring of properly bonded trustees leads us to conclude that, in this case, the transfer of funds to the trustees' corporate agents, controlled by the trustees, . . . did not result in the trust assets being separated from the trust for purposes of G.L. c. 206 § 1 [requiring trustees to make annual accounts to the probate court].

*Id.* Here, the settlor chose the trustees, providing that, when there was a vacancy, the remaining trustees (not the court) would appoint a co-trustee. In *Fuller*, the AG invoked the court's jurisdiction over the corporations. 636 N.E.2d at 1341. Here, the DAG was involved in the transfer of the assets because the referee required his involvement; the DAG unequivocally and repeatedly denied the referee's view that the AG wanted court supervision of the corporations. The district court's reliance on *Fuller* was misplaced because *Fuller* is distinguishable on its facts.

The district court lacked statutory authority to impose continuing supervision on appellants.

## B. Inherent authority

When the judicial branch is asked to decide on a matter regarding the scope of its own inherent authority, it "must resolve all reasonable doubts in favor of a co-ordinate branch" of the government. *State v. M.D.T.*, 831 N.W.2d 276, 280 (Minn. 2013). But the district court's statement that, "[i]t appears that the [AG] is unwilling to take a position on the approval of the formation of the [corporations] leaving the approval entirely resting with the Court" indicates that, in this matter, the judicial branch was not merely willing to assume but insisted on assuming a function of the executive branch, specifically of the AG, by supervising two nonprofit corporations. *See, e.g.*, Minn. Stat. § 317A.811 (providing

9

that nonprofit corporations must notify the AG, not the court, of their intent to dissolve, merge, or consolidate, or to transfer all or substantially all their assets).

To some extent, the problem is nomenclatural. *See* Minn. Stat. § 501C.0102(a) (Supp. 2015) ("This Chapter applies to express trusts, charitable or noncharitable . . . .); Minn. Stat. § 501B.35, subd. 3 (2014) (defining "[c]haritable trust" as "a fiduciary relationship with respect to property that arises as a result of a manifestation of an intention to create it, and that subjects the person by whom the property is held to equitable duties to deal with the property for a charitable purpose"). Thus, there is overlap between some charitable trusts and some express trusts, but not all express trusts are charitable trusts. Nor are all charitable trusts express trusts; some, like those here, are nonprofit corporations. But, while there is overlap between nonprofit corporations and charitable trusts, there is no overlap between nonprofit corporations and express trusts. Express trusts are defined as having a designated trustee with enforceable duties, a designated beneficiary vested with enforceable rights, and a definitive trust res in which the trustee has a legal interest and the beneficiary a beneficial interest. *Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 837 (Minn. 2005). A corporation has no definitive res.

The fact that the district court has jurisdiction over charitable trusts that are also express trusts does not give it jurisdiction over charitable trusts that are also nonprofit corporations, which are supervised by the AG. The district court does not have inherent authority to require a nonprofit corporation to submit to its ongoing supervision.

10

## II.     Jurisdiction

"Whether personal jurisdiction exists is a question of law[,] which we review de novo." *Juelich v. Yamazaki Mazak Optonics Corp*., 682 N.W.2d 565, 569 (Minn. 2004). "The district court may not exercise jurisdiction over a nonparty." *In re Marriage of Sammons*, 642 N.W.2d 450, 457-59 (Minn. App. 2002) (holding that district court did not have personal jurisdiction to impose a constructive trust on the property of the mother of a party to a divorce proceeding because the mother was not a party, and it did not have quasi-in-rem jurisdiction because the mother had not received her due-process rights before the entry of a judgment imposing a constructive trust on her property).  Here, the district court had in rem jurisdiction over the assets when they were the property of the trusts, over which it had personal jurisdiction, but it lost in rem jurisdiction by approving the transfer of the trusts' assets to the corporations, over which it does not have jurisdiction.

The district court erred in concluding that appellants are subject to continuing court supervision.  The denial of appellants' motion to vacate those parts of the orders imposing court supervision on them is reversed.

**Reversed.**