## GRANADA INDEPENDENT SCHOOL DISTRICT NO. 455 AND OTHERS v. DUANE J. MATTHEIS.

170 N. W. (2d) 88.

July 18, 1969—No. 41477.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *John L. Devney* and *J. Dennis O'Brien,* Special Assistant Attorneys General, for appellant.

*Newton A. Johnson* and *Seifert, Johnson, Hand & Berens,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from an order of the district court vacating an order of the commissioner of education in school district consolidation proceedings. It is contended that the court erred in holding that the commissioner's action in denying a proposed consolidation of two independent school districts was arbitrary, capricious, and in unreasonable disregard of the best interests of the territory affected.

The proceedings herein were originated by an application for consolidation submitted by Granada Independent School District No. 455 and Huntley Independent School District No. 221 to the commissioner of education pursuant to Minn. St. 122.23. Preliminary requirements for the application were properly met, including the preparation and filing of a plat of the proposed consolidation. It appears that in such a proceeding the commissioner has the power to approve, modify, or reject the application. Independent School Dist. No. 581 v. Mattheis, 275 Minn. 383, 147 N. W. (2d) 374; In re Appeals of Schluter, 273 Minn. 386, 141 N. W. (2d) 482; Bakken v. Schroeder, 269 Minn. 381, 130 N. W. (2d) 579.

The record indicates that the Granada and Huntley school dis-

tricts lie adjacent to each other in rural Martin and Faribault Counties. Between them they have an assessed valuation of $2,467,923 and approximately 300 students at the secondary level, which places them well within acceptable criteria for consolidation. Prior to 1966, the Granada school district was on the "advised list" of the Department of Education, principally because of deterioration of physical property and inadequate educational standards. The "advised list," as we understand it, implies a deficiency in standards which if not corrected may jeopardize entitlement to state aid. An attempt was made to upgrade the school district. With the help of a bond issue of $187,000, the district attempted to correct its deficiencies by the addition of a science laboratory, lunchroom facilities, music room, and classroom space. In addition, the school district acquired approximately $387,000, the proceeds of an insurance policy on the old school building which had been destroyed by fire. After the fire, one of the assistant commissioners suggested consolidation between Granada and Huntley, as a result of which the respective boards of those districts agreed to seek approval for consolidation. Representatives of the Department of Education expressed the view that their financial condition was satisfactory and encouraged them to try to consolidate. The plan of consolidation was to have the first six grades at Huntley and the last six grades at Granada. Huntley has an elementary facility, which was built about 12 years ago, and a full-time kindergarten. The Granada district proceeded to build a new high school with the insurance money and an additional $50,000, the proceeds of a bond issue. The plan for this building was approved by the Department of Education, the building has been completed, and it is now in use. In the opinion of the superintendents and district board members, the consolidation of the two districts would have enabled them to have two sections in each class, permitting the division of the better and poorer students. The plan permitted more than one foreign language to be taught, and other subjects, including agriculture and art, could be added. The proposed con-

solidation would provide a stronger financial unit, and the duplication of administration would be eliminated.

At the hearing on the application, members of the Fairmont and Winnebago school districts were present at the invitation of the commissioner. After the hearing, the application for consolidation was rejected, and the commissioner urged that Granada join the Fairmont district, which was contiguous to it on the south, and that Huntley consolidate with the Winnebago district, which was contiguous to it on the north. It was the view of the commissioner that the petitioning districts should join with what he considered the larger and stronger districts of Fairmont and Winnebago.

The petitioning districts appealed to the district court from the order of the commissioner, and after hearing the evidence the district court concluded that the commissioner's order was "arbitrary and capricious, and in unreasonable disregard of the best interest of the territory affected." For our purposes, we are concerned only with Minn. St. 127.25, subd. 1(3), which allows an appeal on the grounds:

"That the action appealed from is arbitrary, fraudulent, capricious or oppressive or in unreasonable disregard of the best interest of the territory affected."

In support of its determination, the trial court emphasized that since 1964 Granada had been encouraged by representatives of the Department of Education to "consider the possibility of merging with other districts, or other districts merging with Granada, so that a stronger educational system could be developed." In August 1966, the commissioner had congratulated Granada on its building program. The court noted, "The district was retained on the advised or conditionally approved list" pending an official visit to ascertain if the program had met the requirements for "good standing classification." The court further observed, "The testimony of [the commissioner] indicates, moreover, that as of the date of the hearing he had yet to visit either

school district in person." The court further noted that subsequent to the fire in 1966, pursuant to "conversations and consultations" with representatives of the Department of Education, "both the Huntley and Granada Boards approved the consolidation plan." The trial court was of the view that "the proposed consolidation of the Huntley and Granada districts met the then-standards as to number of students, assessed valuation and financial stability." It went on to say, "Both Huntley and Granada are basically stable farm communities, and they were assisted in their planning by Springsted, Inc., Municipal bond consultants. Their combined assessed valuation of $2,467,123.00 is higher than 70% of the school districts existing in the State of Minnesota today."

In applying the standards expressed in § 127.25, subd. 1(3), the trial court said:

"When [the commissioner's] authority is exercised in an arbitrary or unreasonable manner so as to constitute an abuse of discretion, the courts may and will interfere on behalf of the districts injured thereby. After much urging by members of [the commissioner's] staff, the districts of Granada and Huntley did seek to consolidate, to better serve the educational needs of their students. The Commissioner's rejection of the consolidation plan is an abuse of discretion under all the facts and circumstances of this case, and must therefore be reversed by this Court."

The order of the district court, after vacating the decision of the commissioner of education, provides: "The Commissioner of Education shall forthwith approve said consolidation plat" and return it to the proper county officials as provided by statute.

■ The criteria to be followed in reviewing the action of the district court to determine whether the commissioner has abused his discretion is expressed in In re Certain School Dists. Freeborn County, 246 Minn. 96, 108, 74 N. W. (2d) 410, 418, as follows:

"* * * In reviewing the determination of the trial court, we must always be mindful of the limited scope of judicial review. Our function is to see that the trial court does not transcend that limited field so as to usurp the legislative function, which it does not and cannot have."

While we agree that the trial court could well conclude that the commissioner's order of rejection of the proposed plat should be vacated, we are of the view that his additional order requiring the commissioner to approve the proposed plat for consolidation is inappropriate, if not unauthorized.

The record would indicate that the best interests of the territory would be served by the consolidation. Such a disposition would permit the use of existing property and facilities rather than an abandonment of them. We can well understand the reluctance of the constituents of the two districts to give up what they have now in favor of a new educational structure despite theoretical advantages. It would appear that the trial court's determination was influenced by the commissioner's statements that the Granada district should turn the insurance money back to the insurance company "if it would educate four or five children correctly" and that he would like to see a moratorium of 4 years on athletics. It seems to us that the state board should take into consideration the views of the local constituents as to the kind of educational system they think is best for their community.

It would appear that in the present posture of the proceedings there exists an anomalous situation which should be corrected. This arises from the fact that the consolidation of the two districts does not have the approval of the commissioner, while at the same time the commissioner is without power to implement the change which he thinks would provide better educational advantages for the children of the community. We do not understand from an examination of the statutes that this situation can be corrected by a court order. By legislative enactment, Minn. St. cc. 123 and 124, the Department of Education is given

a broad grant of authority, including advisory action, to shape and maintain proper educational standards. It is not for the court to lightly use judicial authority to enforce or restrain acts which lie within the executive and legislative jurisdictions of another department of the state. Smith v. Holm, 220 Minn. 486, 19 N. W. (2d) 914; State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544. This observation is prompted by a reading of Minn. St. 121.16, which defines the qualifications and duties of the commissioner of education as follows:

"The state board shall elect a commissioner who shall be the executive officer and secretary of the state board and whose term of office shall be six years. He shall be a person who possesses educational attainment and breadth of experience in the administration of public education and of the finances pertaining thereto commensurate with the spirit and intent of this code. The commissioner shall have authority to nominate, for approval by the state board, such officials and employees as may be necessary to perfect and to maintain the organization of the department as recommended by him and as adopted by the state board. He shall perform such duties as the law and the rules of the state board may provide and be held responsible for the efficient administration and discipline of the various offices and division in the organization of the department. He shall be required to make recommendations to the state board which shall facilitate all of the work of the state board, and he shall be charged with the execution of powers and duties which the state board may prescribe, from time to time, to promote public education in the state, to safeguard the finances pertaining thereto, and to enable the state board to carry out the provisions of this code."

It does not seem to us that in their present status the petitioning districts can fully serve the educational needs of the community without the advice, guidance, and financial aids which the State Department of Education is established to provide.

We accordingly remand the proceedings to the Department of Education so that it may have an opportunity to dispose of the

petition in light of the existing circumstances, with due regard to the reasonable needs and interests of the community rather than wholly upon the implementation of some theoretical ideal which the community may not be ready to accept.

Remanded to the commissioner of education for further proceedings.