785 N.W.2d 763 (2010)
STATE of Minnesota, Commissioner of Human Services, Appellant,
v.
M.L.A., n/k/a M.L.M., Respondent.
No. A09-2105.
Court of Appeals of Minnesota.
July 20, 2010.
*764 Lori Swanson, Attorney General, Steven H. Alpert, Assistant Attorney General, St. Paul, MN, for appellant.
Edward J. Matonich, David A. Arndt, Julie Matonich, Matonich & Persson, Chartered, Hibbing, MN, for respondent.
Considered and decided by LARKIN, Presiding Judge; JOHNSON, Judge; and STAUBER, Judge.

OPINION
LARKIN, Judge.
Appellant Commissioner of Human Services claims that the district court exceeded its inherent authority by ordering the expungement of records maintained outside of the judicial branch, and utilized by the Department of Human Services (DHS), regarding respondent M.L.M.'s criminal conviction. The district court ordered expungement in an effort to assist M.L.M. to obtain her employment goals. Because assisting an individual to achieve his or her employment goals is not necessary to the performance of the judiciary's function as contemplated in our state constitution, the district court improperly invoked its inherent authority, and we reverse.

FACTS
On December 21, 2001, M.L.M. pleaded guilty to fifth-degree possession of methamphetamine. The court stayed imposition of sentence. M.L.M. successfully completed probation, and her conviction was deemed a misdemeanor.[1] On May 1, 2009, M.L.M. petitioned the district court to expunge her criminal records pursuant to its inherent authority. In support of *765 her petition, M.L.M. asserted that she had obtained her practical nurse diploma and that the board of nursing might deny her the ability to practice as a nurse unless her criminal records were expunged.
The district court granted M.L.M.'s petition and ordered DHS to seal M.L.M.'s criminal records. The order states that the department "may not use any of the information in regard to the arrest or proceeding in this matter in response to any inquiry or application for employment, licensure, and continuing education." This appeal follows.

ISSUES
Did the district court properly invoke its inherent authority when it ordered the expungement of records maintained outside of the judicial branch in an effort to assist an individual to obtain her employment goals?

ANALYSIS
In this case, we are called upon to review a district court's order for the expungement of records maintained outside of the judicial branch and used by an executive-branch agency, when the order was issued pursuant to the district court's inherent authority and in the absence of a constitutional violation. The supreme court recently addressed a similar issue in State v. S.L.H., 755 N.W.2d 271 (Minn. 2008). In S.L.H., the petitioner sought expungement of records regarding her conviction of fifth-degree felony possession of a controlled substance, arguing that expungement was necessary for her to achieve her employment goals. 755 N.W.2d at 273. The district court denied S.L.H.'s petition with regard to records maintained outside of the judicial branch. Id. at 274. S.L.H. appealed, and this court affirmed. Id.
On review, the supreme court noted that there are two grounds for the expungement of criminal records in Minnesota: Minnesota Statutes chapter 609A and the judiciary's inherent authority.[2]Id. The supreme court stated that "[t]he judiciary possesses inherent authority to expunge criminal records when expungement is `necessary to prevent serious infringement of constitutional rights.'" Id. (quoting State v. C.A., 304 N.W.2d 353, 358 (Minn.1981)). Because S.L.H. conceded that she had not suffered a violation of her constitutional rights, the supreme court framed the issue presented as whether, "in the absence of a violation of constitutional rights, the district court erred when it did not invoke inherent authority to order the expungement of S.L.H's criminal records held outside the judicial branch." Id. The supreme court next reviewed the district court's inherent expungement authority in the absence of a constitutional violation and set forth the principles that follow.
"The judiciary's inherent authority grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government." Id. at 275 (quotation omitted). But in order for a court to exercise this authority, "the relief requested by the court or aggrieved party [must be] necessary to the performance of the judicial function as contemplated in our state constitution." Id. (quotation omitted). A court should not resort to inherent authority "to serve the `relative needs' or `wants' of the judiciary, but only for *766 `practical necessity in performing the judicial function.'" Id. (quoting In re Clerk of Lyon County Courts' Comp., 308 Minn. 172, 181, 241 N.W.2d 781, 786 (1976)). "Accordingly, the judiciary's inherent authority governs that which is essential to the existence, dignity, and function of a court because it is a court." Id. (quotations omitted). "[T]his authority of the court extends only to its unique judicial functions, and ... courts must proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions." Id. at 276 (quotation omitted).
Applying these principles, the supreme court affirmed the district court's refusal to expunge records held outside the judicial branch. Id. at 280. The supreme court reasoned, in part, that the case did not implicate a core judicial function and that "helping individuals achieve employment goals is not essential to the existence, dignity, and function of a court because it is a court." Id. at 277-78 (quotations omitted). The supreme court was also guided by its previous mandate that courts must proceed cautiously when invoking inherent judicial authority because due consideration must be given to equally important executive and legislative functions under our separation-of-powers jurisprudence. Id. at 278. "`[I]t is not for the court to lightly use judicial authority to enforce or restrain acts which lie within the executive and legislative jurisdiction of another department of the state.'" Id. (quoting Granada Indep. Sch. Dist. No. 455 v. Mattheis, 284 Minn. 174, 180, 170 N.W.2d 88, 91 (1969)).
The supreme court noted that under the Minnesota Government Data Practices Act, certain information regarding S.L.H.'s criminal conviction must be kept open to the public and that expungement of this information would "effectively override" this legislative determination. Id. at 278-79. The court went on to say that "in light of the deference that courts are to afford the other branches of government, the judiciary should exercise restraint before invoking inherent expungement authority over records held outside the judicial branch where statutes require that some of the records be kept open to the public." Id. at 279.
We recently relied on S.L.H. to reverse a district court's order for the expungement of records maintained by the executive branch in State v. N.G.K., 770 N.W.2d 177 (Minn.App.2009). N.G.K. had sought expungement of his conviction for gross-misdemeanor theft due to exclusion from employment opportunities. 770 N.W.2d at 179. The district court granted N.G.K.'s petition. Id. We recognized that "[a]lthough the supreme court's opinion in S.L.H. appears to take a narrow view of a court's power to order expungement of records held by executive-branch offices, the opinion does not establish a bright-line rule forbidding such orders in all cases." Id. at 182. But we nonetheless reversed, applying the holding and reasoning of S.L.H. Id. at 183. We concluded that the expungement of records of N.G.K.'s conviction possessed by the executive branch was not "essential to the existence, dignity, and function of a court because it is a court," and therefore not "`necessary to the performance of the judicial function as contemplated in our state constitution.'" Id. (quoting S.L.H., 755 N.W.2d at 275) (other quotation omitted).
In this case, the district court acknowledged the holdings of S.L.H. and N.G.K. but relied on this court's opinion in State v. V.A.J., 744 N.W.2d 674 (Minn.App.2008), review denied (Minn. Oct. 1, 2008), to support its expungement order. In V.A.J., *767 the petitioner requested expungement of records maintained by the Bureau of Criminal Apprehension (BCA) regarding her conviction for misdemeanor theft. 744 N.W.2d at 675. The district court denied V.A.J.'s request, and we reversed, holding that "[a] district court's inherent authority to expunge criminal records includes judicially created records disseminated to an executive agency that maintains custodianship over those records, including judicially created records maintained by the Bureau of Criminal Apprehension." Id. The primary basis for our holding was the fact that the records were initially created through the judicial process. Id. at 678. But in N.G.K., we noted that S.L.H. did not distinguish between records created by the executive and judicial branches. N.G.K., 770 N.W.2d at 182. "Rather, S.L.H. gives the same treatment to all records possessed by the executive branch, regardless whether they were created within that branch or in the judicial branch." Id. We concluded that "[a]lthough S.L.H. did not mention this court's opinion in V.A.J., it is apparent that the holding of V.A.J. does not survive S.L.H." Id.
The district court recognized but disregarded our conclusion that the holding of V.A.J. is no longer valid stating: "Although the appellate panel in N.G.K. determined that V.A.J. is no longer valid law, this Court is not convinced...." The district court, like this court, is bound by supreme court precedent and the published opinions of the court of appeals and should have applied the holdings of S.L.H. and N.G.K. Moreover, the district court's stated reasons for not applying S.L.H. are unsound. The district court reasoned that S.L.H. does not reference V.A.J. or the analysis therein and that the supreme court did not grant review in V.A.J. But the denial of a petition for review "does not provide any confirmation of correctness of the court of appeals decision," Id. at 182, n. 1 (quotation omitted), and it should not have been a factor in the district court's analysis.
More importantly, the holding and analysis of S.L.H. supplant the reasoning in V.A.J., even without an explicit reference. V.A.J. and S.L.H. involved the same type of records and the same custodial agency: information regarding criminal convictions that was generated by the judicial branch and maintained by the BCA, including the type of offense, the conviction date, and the sentence imposed. S.L.H., 755 N.W.2d at 273, 279; V.A.J., 744 N.W.2d at 676, 678. And both cases involved a request for expungement based on the petitioner's pursuit of employment goals. S.L.H., 755 N.W.2d at 273; V.A.J., 744 N.W.2d at 675. V.A.J. held that the district court erred by concluding that it did not have inherent authority to order the expungement of the records held by the BCA, relying solely on the fact that the records were created by the judicial branch. V.A.J., 744 N.W.2d at 678. On nearly identical facts, in S.L.H., the supreme court held that the district court did not err by declining to exercise inherent authority to expunge records held by the BCA, without regard to the fact that the records were judicially created. S.L.H., 755 N.W.2d at 280. These conflicting holdings cannot be reconciled; S.L.H. supersedes V.A.J.
Accordingly, when determining whether to exercise inherent expungement authority in the absence of a violation of constitutional rights, a district court is governed by the holding of S.L.H. and must apply the principles and analysis set forth therein. The district court must first identify the judicial function at issue because "the inherent authority of the judiciary is limited to those functions that are essential to the existence, dignity, and *768 function of a court because it is a court." Id. at 276 (quotations omitted). "[T]he relief requested by the court or aggrieved party [must be] necessary to the performance of the judicial function as contemplated in our state constitution." Id. at 275 (quotation omitted). And, the district court must give due consideration to equally important executive and legislative constitutional functions and exercise restraint when competing executive and legislative policies are implicated. Id. at 276, 279. If the requested relief is not necessary to the performance of the judicial function as contemplated in our state constitution, the district court may not exercise its inherent expungement authority.
We now apply the holding and analysis of S.L.H. to this case. M.L.M. requested, and the district court ordered, expungement of records related to her criminal conviction to facilitate her goal of becoming a licensed nurse. This relief is not necessary to the performance of the judicial function as contemplated in our state constitution. As stated in S.L.H., "helping individuals achieve employment goals is not essential to the existence, dignity, and function of a court because it is a court." Id. at 277-78 (quotations omitted). Therefore, the district court should not have exercised its inherent authority to order DHS to seal M.L.M.'s criminal records.
Moreover, because M.L.M. is seeking employment as a nurse, the expungement of records maintained outside of the judicial branch and utilized by DHS regarding her conviction implicates the legislatively mandated background study and disqualification procedures set forth in the Department of Human Services Background Studies Act contained in Minnesota Statutes chapter 245C (2008).[3] The Act requires DHS to conduct a background study of employees of programs that provide DHS-licensed services. Minn.Stat. § 245C.03, subd. 1 (2008). An individual is disqualified from working in positions involving direct contact with recipients of licensed services if the study reveals that the individual has committed any of several enumerated criminal acts. Minn.Stat. § 245C.14, subd. 1(a) (2008). A 15-year disqualification period applies to an individual who has "committed a felony-level violation of" chapter 152. Minn.Stat. § 245C.15, subd. 2 (2008).
"[I]n light of the deference that courts are to afford the other branches of government, the judiciary should exercise restraint before invoking inherent expungement authority over records held outside the judicial branch" where the expungement would conflict with the legislature's competing expression of public policy. S.L.H., 755 N.W.2d at 279. The expungement order in this case would effectively override the legislative determination that DHS must conduct a background study of employees of programs that provide DHS-licensed services. This is an additional reason why the district court should not have exercised its inherent expungement authority in this case.
On appeal, M.L.M. asserts, for the first time, that Minn.Stat. § 245C.08, subd. 1b (2008) provides the district court with statutory authority to expunge DHS's records. Because this argument was not raised in the district court, we will not consider it in this appeal. See Thiele v. Stich, 425 N.W.2d 580, 582 (Minn.1988) (stating an appellate court will generally not consider matters not argued to and considered by *769 the district court.). We limit our review to the issue presented and hold that the district court erred by invoking its inherent authority to order the expungement of records maintained by DHS regarding M.L.M.'s criminal conviction.

DECISION
In an exercise of its inherent authority, the district court ordered DHS to expunge records regarding M.L.M.'s criminal conviction in an attempt to assist M.L.M. in achieving her employment goals. Because helping an individual achieve an employment goal is not essential to the existence, dignity, and function of the court, the district court improperly invoked its inherent authority.
Reversed.
JOHNSON, Judge (concurring specially).
I concur in the opinion of the court without qualification. I write separately to add two comments concerning the interplay between the inherent judicial authority to expunge criminal records and the expungement statute.
First, there is a common perception that if criminal records possessed by executive-branch offices cannot be expunged pursuant to a district court's inherent judicial authority, records of that type never can be expunged. In chapter 609A of the Minnesota Statutes, however, the legislature has set forth a detailed statutory scheme for the expungement of certain criminal records, including records possessed by executive-branch offices. The statute provides both the grounds for expungement, Minn.Stat. § 609A.02 (2008), and the procedures by which courts should consider expungement petitions, Minn. Stat. § 609A.03 (2008). The statutory expungement scheme expressly contemplates a remedy that is broad enough to reach records possessed by the executive branch. See Minn.Stat. § 609A.03, subd. 3(b) (requiring notice to prosecutorial office); id., subd. 8 (requiring distribution of expungement order to "each agency and jurisdiction whose records are affected"). A person wishing to have criminal records expunged may believe that the expungement statute is inadequate because it applies to only certain types of cases. See Minn.Stat. § 609A.02, subds. 2, 3. The limited scope of the expungement statute reflects a policy decision by the lawmaking branches of our governmentthe legislature and the governorthat criminal records possessed by the executive branch should be expunged by court order only in certain circumstances. Nonetheless, the expungement statute is a means of expunging records possessed by executive-branch offices without doing violence to the principle of separation of powers.
Second, the manner in which district courts typically exercise their inherent judicial authority to expunge criminal records possessed by the executive branch appears to be inconsistent with the conditions originally placed on that authority. When the supreme court conceived of that authority, it stated that "courts must proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions." State v. C.A., 304 N.W.2d 353, 359 (Minn.1981). More specifically, the supreme court stated that even though the inherent judicial authority may not be "controlled by legislative expression of public policy pertaining to access to governmental records, the exercise of inherent authority must be delineated in such a way as to accommodate those policies where appropriate." Id. It appears, however, that when district courts consider expungement requests *770 pursuant to their inherent judicial authority, they do not abide by the legislature's expressed policies concerning the procedural requirements for expungement. For example, the statute requires an expungement petition to address nine specified factors. Minn.Stat. § 609A.03, subd. 2. The statute confers on the victim of a criminal offense a right to notice of the expungement petition and a right to submit an oral or written statement to the district court. Minn.Stat. § 609A.03, subd. 4. And the statute imposes on the petitioner a clear-and-convincing burden of proof. Minn. Stat. § 609A.03, subd. 5. Whenever a district court exercises its inherent judicial authority to expunge criminal records possessed by executive-branch offices in situations not described in section 609A.02 without observing the safeguards of section 609A.03, the district court inevitably undermines the policy decisions of the legislature and thereby exacerbates concerns related to the separation of powers.
This case illustrates the unsettled state of the law concerning the inherent judicial authority to expunge criminal records possessed by the executive branch. As the supreme court has recognized, this court has applied supreme court precedent in inconsistent ways. See, e.g., State v. S.L.H., 755 N.W.2d 271, 274-75 n. 3 (Minn. 2008) (citing cases). The supreme court's most recent decision reiterates prior statements on the subject but does not answer all questions about the scope of the inherent judicial authority. Compare id. at 275-79 (opinion of the court) with id. at 280-82 (concurring opinion). As a result, a district court judge understandably may find it difficult to identify the applicable law. In this case, however, the district court identified the applicable law but chose to disregard it. The district court's approach in this case is not an isolated incident; expungement petitions fairly often elicit such a reaction; redemption is a powerful theme in our culture. But separation of powers is a fundamental concept informing the structure of our government. It is not an easy task to formulate a rule of law that accommodates both considerations. Meanwhile, the law and the practice concerning the inherent judicial authority to expunge criminal records possessed by the executive branch fall far short of the ideal of "stability, order, and predictability." See Fleeger v. Wyeth, 771 N.W.2d 524, 529 (Minn.2009).
STAUBER, Judge (concurring specially).
I concur in the opinion as related to the narrow facts of this case. Here, M.L.M.'s petition requested expungement of a 2002 conviction of fifth-degree possession of a methamphetamine. The conviction disqualified her from certain employment under the Background Studies Act, Minnesota Statutes chapter 245C. But, following her conviction, M.L.M. received two set-asides pursuant to Minn. Stat. § 245C.22, subd. 4 (2008) (where a showing has been made that "... individual does not pose a risk of harm to any person served by the applicant ..."). M.L.M. has worked as a nursing assistant and a phlebotomist pursuant to set-asides. In 2009, she entered and completed the LPN program at Itasca Community College. M.L.M. now anticipates a licensing problem through the Minnesota Board of Nursing and requests expungement of her 2002 conviction. However, the record does not yet evidence any adverse licensing or employment action by the Minnesota Department of Human Services or other state agency. Although the record clearly shows her rehabilitation, recent marriage, and birth of a child, M.L.M. has not yet been refused a "set aside" by the government. Thus, she has not yet suffered an injury.
*771 However, I do not interpret recent expungement cases of this court and the Supreme Court, specifically State v. S.L.H., 755 N.W.2d 271 as narrowly as some. In his concurrence in S.L.H., Justice Anderson, writing for himself and Justices Page and Meyer, warned of this very problem saying, "... I am concerned that our inherent authority, as explained in C.A., could in the future be construed more narrowly than it ought to be based on the wording of the majority opinion." State v. S.L.H., 755 N.W.2d 271, 282 (Minn.2008) (Anderson, J. concurring). He went on to note a more expansive view noting that, "[O]ur inherent authority to grant relief may extend to officials and institutions outside the judicial branch in `appropriate circumstances,' when such relief `is essential to the existence, dignity, and function of a court.'" Id. (internal quotations and citations omitted) (quoting State v. C.A., 304 N.W.2d 353, 358 (Minn. 1981)).
NOTES
[1] "Notwithstanding a conviction is for a felony... the conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence." Minn. Stat. § 609.13, subd. 1(2) (2008).
[2] Statutory expungement under Minn.Stat. § 609A.02, subd. 3 (2008) is limited to situations in which "all pending actions or proceedings were resolved in favor of the petitioner." Statutory expungement under chapter 609A was unavailable to M.L.M. because her guilty plea resulted in a conviction.
[3] In S.L.H., the supreme court recognized that the judiciary's exercise of its inherent expungement authority over records maintained outside of the judicial branch could potentially implicate the Act. 755 N.W.2d at 279 n. 8.