**STATE of Minnesota, Appellant,**

v.

**Mark Alan GREENMAN, Respondent.**

**No. A12–1605.**

Court of Appeals of Minnesota.

Jan. 22, 2013.

Lori Swanson, Attorney General, St. Paul, MN; and Steven M. Tallen, Tallen and Baertschi, Minneapolis, MN, for appellant.

Mark A. Greenman, Minneapolis, MN, attorney pro se.

Considered and decided by HUDSON, Presiding Judge; CHUTICH, Judge; and KLAPHAKE, Judge.

## OPINION

CHUTICH, Judge.

The State of Minnesota challenges dismissal of third-degree driving-while-impaired (DWI) charges against respondent Mark Alan Greenman, contending that the district court erred in concluding that a "Segway" electric personal assistive mobility device (Segway) is not included in the definition of "motor vehicle" in the DWI statute. *See* Minn.Stat. § 169A.03, subd. 15. Because we conclude that Greenman's operation of a Segway did not make him a driver of a motor vehicle under Minn.Stat. § 169A.20, subd. 1, we affirm.

## FACTS

According to the complaint, just after five p.m. on February 4, 2012, Greenman attempted to travel a short distance to his home in Medina using his Segway. After traveling along the walking path, Greenman entered the road, and twice drifted across the center line of the road before being stopped by a Medina police officer. The first time Greenman drifted over the line, a vehicle purportedly had to slow down to avoid striking the Segway.

During the stop, the officer noticed that Greenman showed signs of intoxication and asked him to perform field sobriety tests, which Greenman failed. The officer arrested Greenman on suspicion of driving while intoxicated, and a breath test revealed that he had an alcohol concentration of .19.

Greenman was charged with three offenses: (1) third-degree DWI (driving under the influence of alcohol), (2) third-degree DWI (driving with an alcohol concentration of .08 or more); and (3) failure to operate a personal assistive mobility device with due care. Minn.Stat. §§ 169A.20, subd. 1(1), (5), 169.212, subd. 2(c) (2010).[1] Greenman moved to dismiss the first two charges, asserting that a Segway is not a motor vehicle for purposes of criminal prosecution under the impaired-driving code.

The district court granted Greenman's motion to dismiss. In so ruling, it analyzed the applicable and analogous statutes defining motor vehicles and relied upon an opinion issued by this court, *State v. Brown*, 801 N.W.2d 186 (Minn.App.2011). The district court also referenced an earlier dismissal of a DWI count, again involving Greenman's operation of a Segway. In that earlier prosecution, the district court deemed Greenman to be a pedestrian who could not be charged under Minn.Stat. § 169A.20, the DWI provision. Similarly, the district court here concluded that when Greenman was operating the Segway, he "was not committing driving conduct" because "he was acting as a pedestrian as a matter of law under § 169.212, subd. 1 [2010]." The state appealed.

---

1. The state charged Greenman with a violation of Minn.Stat. § 169.212, subd. 2(c), which places restrictions on when an electric personal assistive mobility device may operate on a roadway. The complaint, however, states that Greenman was charged under this subdivision for failure to drive with "due care," which is a violation of Minn.Stat. § 169.212, subd. 2(b) (2010). This discrepancy is not material to our analysis in this appeal.

## ISSUE

Did the district court correctly determine as a matter of law that Greenman was acting as a pedestrian when operating his Segway and thus was not subject to prosecution for driving a motor vehicle under the Minnesota Impaired Driving Code?

## ANALYSIS

 The state may appeal from a probable-cause dismissal order "based on [a] question[ ] of law." Minn. R.Crim. P. 28.04, subd. 1(1). Here, the state met the required showing of critical impact on its ability to successfully prosecute Greenman because the district court dismissed the DWI charges as a result of its ruling. *See State v. Scott,* 584 N.W.2d 412, 416 (Minn. 1998) (stating that, to appeal a pretrial order in a felony case, the state must show that the order will have a "critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error" (quotation omitted)). The parties' dispute centers on interpretation of statutes, which involves questions of law subject to de novo review. *State v. Fleck,* 810 N.W.2d 303, 307 (Minn.2012).

 When construing a statute, this court is required to consider that "the legislature intends the entire statute to be effective." *State v. Fleming,* 724 N.W.2d 537, 539 (Minn.App.2006) (quoting Minn.Stat. § 645.17). "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Brown,* 801 N.W.2d at 188 (quoting *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000)).

 "Where the legislature's intent is clearly discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning." *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007). But "courts should construe a statute to avoid absurd results and unjust consequences." *Am. Family,* 616 N.W.2d at 278. And reviewing courts "should give a reasonable and sensible construction to criminal statutes." *State v. Murphy,* 545 N.W.2d 909, 916 (Minn.1996).

In dismissing the criminal charges against Greenman, the district court relied upon this court's decision in *State v. Brown,* which analyzed the interplay of definitional provisions in chapters 169 and 169A, the traffic-regulations code and the driving-while-impaired code. 801 N.W.2d at 188–89. Because *Brown* analyzed the same statutory provisions at issue here concerning the same category of transportation device that includes a Segway—"an electric personal assistive mobility device"—we conclude that *Brown* is binding. *See State v. M.L.A.,* 785 N.W.2d 763, 767 (Minn.App.2010) (stating that the court of appeals "is bound by supreme court precedent and the published opinions of the court of appeals"), *review denied* (Minn. Sept. 21, 2010).

In *Brown,* this court held that a mobility scooter is not a motor vehicle for purposes of a DWI prosecution. 801 N.W.2d at 189. In doing so, we found that, to avoid "conflict and an absurd result," we must construe the relevant language of the DWI code together with the relevant provisions of chapter 169, governing traffic regulations in Minnesota. *Id.*

This approach is consistent with the plain language defining terms in the DWI code. For example, the DWI code specifically directs the court to use definitions provided in section 169.011 (the definitional provision of the traffic-regulations chapter) if a term used in the DWI statute is

not defined within the DWI code. Minn. Stat. § 169A.03, subd. 1(b). The DWI code's definitional provision also recognizes that defined terms in the DWI chapter have the meanings given "unless the context clearly indicates otherwise." *Id.*, subd. 1(a).

In reaching its result, the *Brown* court first analyzed the provisions of chapter 169, governing traffic regulations. It noted that the definition of "motor vehicle" in that chapter specifically *excluded* "an electric personal assistive mobility device." *Brown*, 801 N.W.2d at 188. After analyzing the terms "driver," "vehicle," "pedestrian," and "wheelchair," the court concluded that, under the traffic regulations chapter, Brown's scooter was not a motor vehicle and that Brown was, "while operating his scooter, a pedestrian." *Id.*

The *Brown* court next analyzed the language of one of the DWI provisions at issue here making it a crime for "any person to drive, operate, or be in physical control of any motor vehicle, as defined in section 169A.03, subdivision 15 . . . when the person's alcohol concentration . . . is 0.08 or more." 801 N.W.2d at 189 (quoting Minn.Stat. § 169A.20, subd. 1(5)). It then narrowed the broad definition of "motor vehicle" found in section 169A.03, subdivision 15 ("every vehicle that is self-propelled . . . but does not include a vehicle moved solely by human power") by following the statutory cross-reference to the definition of "vehicle" contained in chapter 169, governing traffic regulations. *Id.* (discussing Minn.Stat. §§ 169A.03, subd. 25, 169.011, subd. 92).

The *Brown* court ultimately determined that Brown's mobility scooter was a wheelchair that did "not meet the definition of 'vehicle,' because it is generally not a 'device in, upon, or by which any person or property is or may be transported . . . upon a highway.'" *Id.* at 189 (quoting

Minn.Stat. § 169.011, subd. 92). Accordingly, because Brown's scooter was not a "vehicle," the court concluded that it was not a "motor vehicle," as that term is used in the DWI laws. *Id.*

The *Brown* court's interpretation of the traffic and DWI statutes applies equally to Segways. The DWI statutes do not define a "personal assistive mobility device," but that term is defined in the traffic-regulations chapter as "a self-balancing device with two nontandem wheels, designed to transport not more than one person, and operated by an electric propulsion system that limits the maximum speed of the device to 15 miles per hour." Minn.Stat. § 169.011, subd. 26 (2010).

■ A Segway meets this definition because it is a two-wheeled, self-balancing, battery-powered device designed for use in places a car or bicycle cannot go, including in buildings. *See* Segway, *The Segway PT: An Overview*, http://www.Segway. com/individual/learn-how-works.php (last visited Jan. 14, 2013). Just like Brown's scooter, the Segway is an "electric personal assistive mobility device" that is specifically excluded from chapter 169's definition of "motor vehicle." Minn.Stat. § 169.011, subd. 42 (2010) (defining "motor vehicle" in relevant part as "every vehicle which is self-propelled," but "does not include an electric personal assistive mobility device"). In addition, the traffic regulations specifically provide that "a person operating an electric personal assistive mobility device has the rights and responsibilities of a pedestrian." Minn.Stat. § 169.212, subd. 1.

■ Similar to *Brown*, Minnesota law prohibits Segways from operating on a roadway when a sidewalk is available. *See* Minn.Stat. § 169.212, subd. 2(c)(2). While Segways can operate on bike paths, section 169.212, subdivision 2(c), restricts opera-

tion on roadways to very limited situations. Thus, Greenman's Segway does not meet the definition of "vehicle," because it is generally not a "device in, upon, or by which any person ... may be transported ... upon a highway." Minn.Stat. § 169.011, subd. 92 (2010). Accordingly, it is not a motor vehicle for purposes of a DWI criminal prosecution.

The state contends that *Brown* is distinguishable because Brown had a physical disability and Greenman does not. But the rationale of *Brown* applies to Segways, as well as to scooters used as wheelchairs, because they are the same type of transportation—electric personal assistive mobility devices—regardless of whether the operator is disabled. Moreover, caselaw shows that Segways are used by disabled persons as a substitute for walking. *See, e.g., Baughman v. Walt Disney World Co.,* 685 F.3d 1131, 1135–36 (9th Cir.2012) (interpreting the Americans with Disabilities Act, which guarantees "full and equal enjoyment," to require accommodation for a park patron who used a "power-driven mobility device[ ]," including a Segway); *see also* 28 C.F.R. § 36.311 (2012). Indeed, Segways fit the definition of "wheelchair" in the traffic regulations chapter: "[A]ny manual or motorized wheelchair, scooter, tricycle, or similar device used by a disabled person as a substitute for walking." Minn.Stat. § 169.011, subd. 93 (2010). Given that Segways are in the same class of transportation device as the wheelchair in *Brown* and also help disabled persons to ambulate, we do not find the state's proposed distinction persuasive.

Our conclusion that the legislature did not intend to prohibit the operation of a Segway in the DWI code is further supported by the statute's specific inclusion of other modes of transportation. For example, despite the broad language defining a "motor vehicle" in section 169A.03, subdivi-

sion 15, the legislature crafted language specifically prohibiting drivers from operating motorboats, snowmobiles, all-terrain vehicles, and other off-road vehicles while under the influence of alcohol. Minn.Stat. §§ 169A.03, subds. 14, 16 (defining "motor boat in operation" and "off-road recreational vehicle"), 169A.20, subds. 1a, 1b, 1c (proscribing operation of motorboats, snowmobiles, all-terrain vehicles, off-road motorcycles, and off-road vehicles while intoxicated). By contrast, no language in the DWI statute prohibits operation of an "electric personal assistive mobility device" while under the influence of alcohol. Had the legislature intended to prohibit drivers from operating Segways while under the influence of alcohol, the legislature could have included a specific provision proscribing that conduct, as it has done in so many other instances. Notably, the legislature also excluded electric personal assistive mobility devices from the definition of "motor vehicle" in the statutes governing drivers' licenses. Minn.Stat. § 171.01, subd. 39 (2010).

■ Finally, interpreting the definition of motor vehicle in the impaired-driving code to exclude Segways avoids any due-process issues that may arise under the circumstances of this case. A penal statute can be void for vagueness if it fails to give a person of ordinary intelligence fair notice of conduct that is forbidden by the statute. *State v. Newstrom,* 371 N.W.2d 525, 528 (Minn.1985). Because a person operating a Segway is treated like a pedestrian and the device is excluded from the definition of "motor vehicle" under the traffic regulations code, an average person would not necessarily know that a Segway is a motor vehicle under the law criminalizing intoxicated driving. Indeed, this concern is heightened in Greenman's case, because the district court dismissed a prior DWI charge against him after it found

that a Segway is not a motor vehicle for purposes of criminal prosecution under the impaired-driving code.

In sum, the context presented here, precedent, and the statutory framework itself compel us to construe the definition of "motor vehicle" in the DWI code in harmony with the pertinent provisions of the traffic-regulations code. Given the circumstances of this case—a device that is governed by traffic regulations pertaining to "pedestrians" and is primarily operated on sidewalks, bike paths, and in buildings, and a DWI code that cross-references key definitions in the traffic-regulations code, including those for "vehicle," "driver" and "pedestrian"—excluding the operation of Segways from the DWI statutes avoids an unreasonable and illogical result. *See Brown*, 801 N.W.2d at 189.

## DECISION

Because a Segway is not a motor vehicle within the meaning of the impaired-driving code, the district court properly dismissed the DWI charges against Greenman.

**Affirmed.**

KLAPHAKE, Judge (dissenting).*

I respectfully dissent because the plain language of Minnesota Chapter 169A (2010) includes operation of a Segway. "When the meaning of the plain language of a statute is clear and unambiguous, we must apply that meaning." *State v. R.H.B.*, 821 N.W.2d 817, 820 (Minn.2012).

Minn.Stat. § 169A.01, subd. 1, starts with the clear directive that it "appl[ies] to any person who drives, operates, or is in physical control of a motor vehicle within this state." The definition of "motor vehicle" follows and includes "every vehicle

that is self-propelled and every vehicle that is propelled by electric power obtained from overhead trolley wires. The term includes motorboats in operation and off-road recreational vehicles, but does not include a vehicle moved solely by human power." Minn.Stat. § 169A.03, subd. 15. As used in chapter 169A, "vehicle" is defined by reference to the definition contained in traffic regulations, which includes "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks." Minn.Stat. §§ 169A.03, subd. 25, 169.011, subd. 92 (2010).

This statutory language is clear; it encompasses the Segway that was driven by respondent. The operative language includes "every vehicle that is self-propelled," and excludes only "vehicle[s] moved solely by human power." Minn. Stat. § 169A.03, subd. 15. The references apply to "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway." Minn.Stat. § 169.011, subd. 92. Because a Segway is a self-propelled vehicle or "device" that is not moved solely by human power and by which respondent could be transported upon a highway, a Segway falls within the definition of "motor vehicle" under the impaired driving code.

The majority engages in "construction" of chapter 169A as if this chapter were ambiguous. But it is not. If a statute is not ambiguous, we must enforce the language of the statute as written. *R.H.B.*, 821 N.W.2d at 820; *State v. Campbell*, 814 N.W.2d 1, 4 (Minn.2012) ("If the language of a statute is plain and unambiguous, it is presumed to manifest legislative intent and we must give it effect."). The majority's

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

determination of ambiguity arises out of traffic regulations where a Segway is not treated as a motor vehicle. But Minn.Stat. § 169.02, subd. 1 (2010), begins by the admonition that the definitions of chapter 169 apply "except" as otherwise provided. Chapter 169A does so "otherwise" provide when it defines a motor vehicle as "every vehicle that is self-propelled." Thus, the definition of chapter 169 does not apply to chapter 169A, and no ambiguity exists.