*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0468**

State of Minnesota,
Respondent,

vs.

Tyrese Thomas,
Appellant.

**Filed March 28, 2016
Affirmed in part, reversed in part, and remanded
Kalitowski, Judge\***

Chippewa County District Court
File No. 12-CR-14-79

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul,
Minnesota; and

David M. Gilbertson, Chippewa County Attorney, Montevideo, Minnesota (for
respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Kalitowski, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KALITOWSKI**, Judge

Appellant Tyrese Thomas challenges his convictions of first- and second-degree criminal sexual conduct, arguing that the district court deprived him of a fair trial by seating a biased juror without rehabilitating the juror and that the district court erred by formally adjudicating him guilty of an included offense, second-degree criminal sexual conduct, for the same behavior on which the first-degree criminal-sexual-conduct charge was based. We affirm appellant's conviction of first-degree criminal sexual conduct and remand to the district court to vacate his conviction of second-degree criminal sexual conduct.

## DECISION

Thomas maintains that the district court erred when it failed to strike a biased juror, L.O., for cause sua sponte and seated L.O. without ensuring that he was rehabilitated. By failing to object to L.O., however, Thomas has waived the right to challenge L.O. for cause. But even if his argument is not waived, we conclude that Thomas has failed to establish actual bias and that L.O. was rehabilitated regarding any possible bias by the district court's questioning.

### I.

The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. The right to an impartial jury also derives from a defendant's right to due process of law. *Irvin v. Dowd*, 366 U.S. 717, 722,

2

81 S. Ct. 1639, 1642 (1961). The bias of even a single juror violates a defendant's constitutional rights because "the impartiality of the adjudicator goes to the very integrity of the legal system." *State v. Fraga*, 864 N.W.2d 615, 623 (Minn. 2015) (quotation omitted).

Rule 26.02, subdivision 5, of the Minnesota Rules of Criminal Procedure provides for the removal of any prospective juror who is not impartial. The rule enumerates 11 grounds on which a juror may be challenged for cause. Minn. R. Crim. P. 26.02, subd. 5(1). One such ground is when a prospective juror's "state of mind . . . satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party." Minn. R. Crim. P. 26.02, subd. 5(1)1.

The party challenging a prospective juror on this ground has the burden of establishing that the prospective juror has "actual bias" toward the case or a party. *State v. Munt*, 831 N.W.2d 569, 577 (Minn. 2013). To satisfy that burden, the challenging party must show more than "'the mere existence of any preconceived notion as to the guilt or innocence of an accused'"; the challenging party must show a "'strong and deep impression[]' that would prevent [the prospective juror] from lay[ing] aside [an] impression or opinion." *Id.* (quoting *Irvin*, 366 U.S. at 722–23 & n.3, 81 S. Ct. at 1642–43 & n.3).

To determine whether a juror is biased, district courts follow a two-step process. *Fraga*, 864 N.W.2d at 623. First, it must determine whether the juror expressed actual bias. *Id.* Second, the district court must determine whether the juror was properly rehabilitated; a juror is rehabilitated if she states unequivocally that she will follow the

3

district court's instructions, set aside any preconceived notions, and fairly evaluate the evidence. *Id.* "A reviewing court should give deference to the district court's ruling on challenges for cause because the district court is 'in the best position to observe and judge the demeanor of the prospective juror.'" *State v. Prtine*, 784 N.W.2d 303, 310 (Minn. 2010) (quoting *State v. Graham*, 371 N.W.2d 204, 206 (Minn. 1985)); *see also State v. Logan*, 535 N.W.2d 320, 323 (Minn. 1995) (holding that the question of whether a juror is impartial is a credibility determination and that appellate courts defer to a district court's finding of impartiality). Appellate courts "review a district court's decision to seat a juror for abuse of discretion." *Fraga*, 864 N.W.2d at 623.

Here, at the outset of jury selection, all potential jurors agreed that they would have no difficulty accepting or following the rules of law that (1) Thomas was presumed to be innocent, (2) the state had the burden of proof, (3) the state was required to prove each charge beyond a reasonable doubt, and (4) Thomas did not have to prove his innocence. When the district court further asked them if they "had heard or read anything regarding the alleged incident," five potential jurors, including L.O., reported that they read a newspaper article that described the charges, summarized the alleged offense, and noted that Thomas was currently incarcerated for unrelated drug charges.

The district court questioned L.O. as follows:

> THE COURT: Okay, now you read about the case in the West Central Tribune, is that right?
> [L.O.]: Yes, on Saturday, and I saw the starting date of the trial was Wednesday. And my math is pretty good and I figured it out.
> THE COURT: You put two and two together and decided this was going to be your case?
> [L.O.]: Yes.

4

THE COURT: All right. Now do you understand that if you're selected as a juror you must decide the case only on the evidence that you hear in this courtroom?

[L.O.]: Yes.

THE COURT: And the instructions of law that I give you?

[L.O.]: Yes.

THE COURT: Whatever you did read are you able to set that aside and make your decision only on the evidence that you hear in this courtroom?

[L.O.]: That is correct, yes.

THE COURT: All right. And is there anything about what you did read in the paper that causes you at least at this point in time to lean one way or the other in the case? In other words, are you predisposed to believe that Mr. Thomas is guilty, or not guilty based on what you read in the paper?

[L.O.]: That's a tough question.

THE COURT: Why don't you explain?

[L.O.]: Ah --- once you hear something or see something it sticks with you a little bit. It's not easily erased.

THE COURT: If I instruct as I already have, and as I will again if you sit as a juror that Mr. Thomas is presumed innocent and the State bears the burden of proof beyond a reasonable doubt --

[L.O.]: Yes.

THE COURT: -- and also instruct you that you must disregard any information that you have about the case that you learned of outside the courtroom, are you able to follow that instruction, or do you believe that what you have read would taint and interfere with your ability to deliberate and make a decision? And I guess what I'm asking is this intellectual question, can you separate what you --

[L.O.]: I believe I can, yes.

The district court then allowed questioning, and defense counsel additionally asked L.O. how many times he read the article. After L.O. responded that he had only read it once, both defense counsel and the prosecutor stated that they had no further questions.

Once questioning ended, defense counsel expressly stated "I pass the panel for cause." After the prosecutor passed the panel for cause, the district court permitted the parties to use their peremptory strikes.

5

**Appellant Has Waived the Right to Challenge L.O.**

Before addressing Thomas's argument, the state argues that Thomas's failure to challenge L.O. for cause, given the opportunity, should result in waiver of his juror-bias claim on appeal. Quoting *State v. Brown*, 732 N.W.2d 625, 630 (Minn. 2007), Thomas asserts that seating a biased juror is structural error and "[s]tructural errors always invalidate a conviction whether or not a timely objection to the error was made."

Consistent with the state's contention, this court has recently held that it "will not consider whether a district court erred by not striking a juror for cause *sua sponte* if the appellant expressly waived the right to challenge the juror for cause." *State v. Geleneau*, 873 N.W.2d 373, 376 (Minn. App. 2015), *pet. for review filed* (Minn. Jan. 20, 2016). In *Geleneau*, as here, the appellant argued that the district court erred by failing to dismiss two prospective jurors for cause sua sponte. *Id.* at 378. Noting Minnesota and federal caselaw consistent with requiring parties to preserve the error for appeal, we declined to consider the merits of Geleneau's argument. *Id.* at 380–81. Because Geleneau's trial counsel did not challenge either juror for cause and later expressly passed the panel for cause, we held that Geleneau had affirmatively waived the right to challenge the impaneled jurors on appeal. *Id.* at 381.

Presently, *Geleneau* controls on whether this court will consider Thomas's argument. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (stating that this court is "bound by supreme court precedent and the published opinions of the court of appeals" and must apply precedent to factually similar cases), *review denied* (Minn. Sept. 21, 2010). As in *Geleneau*, Thomas's trial counsel expressly passed the juror panel for

6

cause, thereby affirmatively waiving the right to challenge the impaneling of L.O. on appeal. *See Geleneau*, 873 N.W.2d at 381.

Moreover, because the *Brown* court vacated the defendant's conviction on different grounds before addressing his juror-bias claim, the *Brown* language Thomas relies on is not controlling. *See* 732 N.W.2d at 629. Accordingly, following *Geleneau*, we decline to consider his challenge to the district court's failure to sua sponte strike L.O.

**No Actual Bias**

Moreover, even if we were not bound by this court's decision in *Geleneau*, the record shows that the district court did not err by impaneling L.O. because Thomas has not demonstrated actual bias. L.O.'s statement that "once you hear something or see something it sticks with you a little bit," does not rise to the level of the statements of the challenged jurors found to be actually biased in Minnesota caselaw. *See e.g.*, *Fraga*, 864 N.W.2d at 623–24 (holding that the district court erred in seating a juror who knew about the case, had read about it in the newspaper, had discussed case details with his mother-in-law, an emergency room nurse where the victim was treated, and called the allegations "sickening"); *Prtine*, 784 N.W.2d at 311 (holding that the district court erred when it declined to strike for cause a juror who repeatedly expressed that "she would be more inclined to believe a police officer's testimony"); *see also Brown*, 732 N.W.2d at 629 ("[A] juror admitted that he was racially biased, that he did not trust black people, and that his daughter was dating a black man and he would not allow the man in his home."). L.O.'s statements reveal no impressions concerning the case or either party, which is understandable, as the record suggests that the article he read simply listed the allegations

7

against Thomas. *See Irvin*, 366 U.S. at 722 & n.3, 81 S. Ct. at 1642 & n.3 (noting that fairness does not require "that the jurors be totally ignorant of the facts and issues involved").

**L.O. Was Rehabilitated**

Finally, even if L.O.'s statements constituted some degree of bias, the district court properly rehabilitated him. In response to L.O.'s statements about the newspaper article, the district court sought confirmation from L.O. that he understood that Thomas was presumed innocent and that the state bore the burden of proof beyond a reasonable doubt. The district court further sought assurance that L.O. could disregard any extrajudicial information, to which L.O. responded, "I believe I can, yes." Because the district court is "in the best position to observe and judge the demeanor of the prospective juror," *see Prtine*, 784 N.W.2d at 310, we defer to the district court's implicit finding that L.O.'s response indicated that he was capable of following the district court's instructions, setting aside any preconceived notions, and fairly evaluating the evidence.

## II.

Thomas asserts, and the state agrees, that the district court erred by formally adjudicating him guilty of second-degree criminal sexual conduct. "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2014). "A lesser degree of the same crime" is an included offense. *Id.* Accordingly, second-degree criminal sexual conduct is a lesser-included offense of first-degree criminal sexual conduct. *State v. Kobow*, 466 N.W.2d 747, 752 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991).

8

"[T]he 'conviction' prohibited by this statute is not a guilty verdict, but is rather a formal adjudication of guilt." *State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999); *see also* Minn. Stat. § 609.02, subd. 5 (2014) (defining a conviction as a guilty verdict by a jury that is "accepted and recorded by the court"). On review, this court typically looks "to the official judgment of conviction . . . as conclusive evidence of whether an offense has been formally adjudicated." *Pflepsen*, 590 N.W.2d at 767. "When this official judgment order states that a party has been convicted of or sentenced for more than one included offense," the supreme court has vacated the conviction and remanded for adjudication and resentencing on only one offense. *Id.*

At the sentencing hearing in this case, the district court adjudicated Thomas guilty of first- and second-degree criminal sexual conduct, imposing a 306-month sentence for only the first-degree criminal-sexual-conduct charge. Similarly, the criminal judgment and warrant of commitment mirrors this disposition, noting that the district court credited Thomas with 499 days towards his sentence for the first-degree criminal-sexual-conduct conviction.

Thomas argues that the district court erred by convicting him of both counts because second-degree criminal sexual conduct is an included offense of first-degree criminal sexual conduct and the charges stemmed from the same conduct. He maintains that his conviction of second-degree criminal sexual conduct should be vacated and asks that we direct the district court to issue a corrected order and warrant of commitment. We agree.

Thomas was correctly sentenced on only one count. But the official judgment of conviction and the sentencing hearing transcript reflect a recorded, formal adjudication of

9

guilty for the included offense of second-degree criminal sexual conduct. This was error. Accordingly, we remand to the district court to correct the order and warrant of commitment to vacate Thomas's second-degree criminal-sexual-conduct conviction.

**Affirmed in part, reversed in part, and remanded.**